ADELAIDE E. T. BUCHANAN, Appellant, v. GEORGE H.
TILDEN, Respondent.

1. HUSBAND AND WIFE — CONSIDERATION SUPPORTING PROMISE OF
THIRD PARTY TO HUSBAND IN FAVOR OF WIFE — ENFORCEMENT BY
WIFE. A husband rests under other and higher moral and legal obliga-
tions to his wife than that of bare maintenance, which the law will
recognize as a sufficient consideration to support the promise of a third
party to the husband in favor of the wife and render it enforceable by her;
and among such obligations is that of providing for her against the con-
tingency of his incapacity or death.

2. RELATION OF HUSBAND AND WIFE AS CONSIDERATION FOR COVE-
NANT. The authorities in support of the doctrine that the relation of hus-
band and wife affords ample consideration for covenants of third parties
with the husband inuring to the benefit of the wife collated and approved.

3. UNITY OF HUSBAND AND WIFE. The common-law unity of husband
and wife survives for the purpose of aiding the wife to enforce a cove-
nant for her benefit made by a third party with her husband and which
equity and good conscience approve.

4. ACTION BY WIFE AGAINST PROMISOR ON PROMISE MADE TO HUSBAND
IN HER FAVOR — RIGHT OF ACTION SUSTAINED. The defendant, one of
a testator's next of kin, requiring means to contest a bequest of a large
fund which, if not well bequeathed, would fall to the next of kin, and in
which the plaintiff, a married woman, had an equitable interest by reason
of adoption by a relative of the testator, procured, through the plaintiff's
husband, a loan of money for the litigation, on promising the husband to
pay the plaintiff $50,000 in case of success. The defendant succeeded in
obtaining the fund for the next of kin, repaid the loan, and paid the
plaintiff a portion of the $50,000 ; whereupon she brought this action for
the balance. _Held_ (without deciding whether the mere relation of hus-
band and wife alone constituted a sufficient consideration to enable the
plaintiff to maintain the action), that the equities of the plaintiff were such
that when considered in connection with the duty of her husband to pro-
vide for her future and with the fact that, with that purpose in view, the
money was procured for the defendant to institute and pursue the neces-
sary litigation to secure the fund to which her equities related, all taken
together were sufficient to sustain the plaintiff's action.

_Buchanan_ v. _Tilden_, 5 App. Div. 354, reversed.

(Argued December 16, 1898; decided January 24, 1899.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered June
2, 1896, reversing a judgment in favor of plaintiff for

$54,421.18, entered upon a verdict directed by the court, and ordering a new trial.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Louis S. Phillips* and *William B. McNiece* for appellant. This appeal from the order of the Appellate Division granting a new trial on exceptions is well taken, as only questions of law are involved. (Code Civ. Pro. §§ 190, 191, 1337; *Williams* v. *D., L. & W. R. R. Co.*, 127 N. Y. 643 ; *Cooke* v. *U. Mfg. Co.*, 138 N. Y. 610 ; *Kirtz* v. *Peck*, 113 N. Y. 222; *Bowery Bank* v. *Gerety*, 153 N. Y. 411.) An action lies on the part of the plaintiff to enforce the specific promise made by defendant to Robert D. Buchanan, the husband of plaintiff, in consideration of the services rendered by Robert D. Buchanan to the defendant, to pay to plaintiff or her order the sum of $50,000, upon a contingency which has happened. (*Jefferson* v. *Asch*, 25 L. R. A. 257 ; *Rector, etc.,* v. *Teed*, 120 N. Y. 580 ; *Sedgwick* v. *Stanton*, 14 N. Y. 296 ; *Bundy* v. *Newton*, 29 Abb. [N. C.] 66 ; *Fowler* v. *Callan*, 102 N. Y. 395 ; *Shepard* v. *Shepard*, 7 Johns. Ch. 57 ; *Coleman* v. *Whitney*, 62 Vt. 123 ; *Bourne* v. *Mason*, 1 Ventris, 6 ; *Dutton* v. *Poole*, 1 Ventris, 318, 332 ; 2 Levinz, 210 ; *Lawrence* v. *Fox*, 20 N. Y. 268.) The obligation of the husband to provide for the wife, whether in his lifetime, or after death, is such an obligation or duty as will sustain the promise to the husband for the benefit of the wife. (*Shepard* v. *Shepard*, 7 Johns. Ch. 57; *Hunt* v. *Johnson*, 44 N. Y. 27 ; *Romaine* v. *Chauncey*, 129 N. Y. 566; *Wetmore* v. *Wetmore*, 149 N. Y. 520 ; *People ex rel.* v. *Cullen*, 153 N. Y. 629.) If the wife finally recovers in this action her husband will be debarred from recovery upon the same contract or for the services which furnished the consideration therefor. (*Stamp* v. *Franklin*, 144 N. Y. 607 ; *Cone* v. *N. F. Ins. Co.*, 60 N. Y. 619.) This case is not within the statute limiting the fees of a broker to one-half of one per cent. ( *Colligan* v. *Scott*, 58 N. Y. 670 ; *B. Bank* v. *Gerety*, 153 N. Y. 411;

*Corp* v. *Brown*, 2 Sandf. 293; *Broad* v. *Hoffman*, 6 Barb. 177; *Cook* v. *Phillips*, 56 N. Y. 310; *Crane* v. *Powell*, 139 N. Y. 379; *W. T. & C. Co.* v. *Kilderhouse*, 87 N. Y. 430; *Thurston* v. *Cornell*, 38 N. Y. 281; *Haughwout* v. *Garrison*, 69 N. Y. 339; *Bevier* v. *Covell*, 87 N. Y. 55.)

*Delos McCurdy* for respondent. The verdict was directed upon two grounds, the first being the broad one that where one person makes a promise to another for the benefit of a third person, that third person may maintain an action on such promise; and that in the action it is unnecessary to show a debt, duty or obligation due from the promisee to the beneficiary who seeks to enforce the contract; and the second ground being that the mere relationship of husband and wife constitutes a consideration which enables the wife to maintain an action against a third person to enforce a promise made to her husband, for her benefit, by such third person. Both of these propositions are untenable. (1 Vin. Abr. 333–337; *Bourne* v. *Mason*, 1 Ventris, 6; *Crow* v. *Rogers*, 1 Stra. 592; *Ward* v. *Evans*, 2 L. Raym. 928; *Israel* v. *Douglass*, 1 H. Black. 239; *Weston* v. *Barker*, 12 Johns. 276; *Price* v. *Easton*, 4 Barn. & Adolph. 433; *Griffith* v. *Ingledew*, 6 S. & R. 442; *Tweddle* v. *Atkins*, 1 B. & S. 393; *Jones* v. *Robinson*, 1 Exch. 454; *Mellen* v. *Whipple*, 1 Gray, 321.) If the judgment in the case of *Dutton* v. *Poole* can be considered as establishing the general principle that the relationship of father and child enables the child to maintain an action against a third person to enforce a promise made by that third person to the father, to give money or property to such child for a consideration supplied to the third person by the father, this principle has not been so extended as to give the same effect to any other or different relationship. (*Buchanan* v. *Tilden*, 18 App. Div. 123.)

BARTLETT, J. At the close of plaintiff's case both parties moved for a directed verdict, and neither asked to go to the jury on any question.

The trial judge thereupon directed a verdict for the plaintiff. The Appellate Division, with a divided court, reversed the judgment in plaintiff's favor entered upon the verdict and ordered a new trial. The plaintiff has appealed from that order, stipulating for judgment absolute in case of affirmance, and presents for our determination a single question of law arising upon undisputed facts.

Before stating that question reference will be made to the material facts. The plaintiff is the adopted daughter of Moses Y. Tilden, a brother of the late Samuel J. Tilden. The defendant is an heir at law and next of kin of Samuel J. Tilden.

On the 20th day of October, 1886, the defendant began an action against the executors of the estate of Samuel J. Tilden and others, praying judgment that the thirty-fifth article of Mr. Tilden's will be adjudged void, and that the property therein mentioned be declared undisposed of by any provision thereof.

The defendant being without means to prosecute this action applied to Robert D. Buchanan, the husband of the plaintiff, for assistance in raising the funds necessary to carry on the litigation. Buchanan expressed his willingness to aid defendant if certain arrangements were made, and said that his uncle, Robert G. Dun, might be willing to advance the money required.

The defendant expressed himself as willing "to do anything in the world to raise the money — to make any arrangement that was reasonable," and said to Buchanan, that if the contest was successful Mrs. Buchanan "should come in share alike with the rest of them." It was evidently within the contemplation of the parties that if this action of the defendant was successful the result would be that, as to a very large part of his estate Mr. Tilden died intestate, and that while the plaintiff, as an adopted child of Moses Y. Tilden and not of Samuel J. Tilden's blood, might take no part thereof, yet there were the strongest moral and family reasons why she should be regarded as an heir at law and next of kin.

Buchanan induced Dun to make certain necessary advances to the extent of five thousand dollars, and Dun consented to do so solely on the ground that plaintiff was to share the fruits of. a successful contest, he being unacquainted with the defendant.

This portion of the money was advanced by Dun about the time defendant began his action, and he was then presented to Dun and repeated to him the promise in regard to. plaintiff sharing alike with the rest of the heirs that he had made to her husband. In February, 1887, the defendant asked Buchanan if he could raise more money.

Buchanan testified that in response to this application, " I told him that I thought before any more money was talked about that the arrangement that had been talked about had better be whipped into line   *   *   *   and he said they were all perfectly willing to share and share alike in that matter. I said that does not satisfy me ; that is not what I want ; I want some positive agreement. After considerable further talk he said that his brothers and sisters were scattered ; that he could not get it into shape just then, but that he had to have some more money and had to have it right away, and in order to get the money and have it right away he, on his own personal behalf, having nothing to do with his brothers or sisters in any sense, would obligate himself to pay personally fifty thousand dollars." Thereupon defendant and Buchanan went to the office of counsel where the following letter was drawn up, signed by defendant, and delivered by Buchanan to Dun :

" NEW YORK, <em>February 19th,</em> 1887.

" ROBERT G. DUN, Esq.,

  " No. 314 B'way,

    " N. Y. City :

" MY DEAR SIR.— It is understood between Mr. R. D. Buchanan and myself that in the event of the success of the proceedings now pending, or any which may be taken, to practically set aside the thirty-fifth section of the will of my late uncle, Samuel J. Tilden, in view of the assistance looking

15

to that end, which has been and may be rendered by Mr. Buchanan as well as by yourself, that I will, and hereby do, become responsible for the payment to Mrs. Adelaide E. Buchanan, or her order, of the sum of fifty thousand dollars.

" It is further understood between us that, while I am not strictly authorized to speak in behalf of my brothers and sisters in that respect, that from what has already transpired between me and them, in the event of such success they will be disposed to act generously with Mrs. Buchanan in the premises.

" Yours very resp'y,<br>" GEORGE H. TILDEN."

It will be observed that this letter, while charging defendant in a fixed sum, leaves open the general adjustment between plaintiff and defendant's brothers and sisters.

After receiving this written declaration of the defendant, Dun continued his advances until they aggregated over twenty thousand dollars.

A long contest followed in the courts; defendant succeeded in his action, and he and others became entitled to a very large sum of money that the late Samuel J. Tilden supposed he had dedicated to public uses under the thirty-fifth article of his will.

Dun testified that the defendant had repaid his advances; that they were collected through his attorney, but he thought an action was brought against him.

Defendant paid plaintiff eight thousand one hundred and fifty dollars on account of the fifty thousand dollars under the letter of February 19th, 1887.

As nothing more was paid, and plaintiff received no recognition from the heirs at law and next of kin of Mr. Tilden, she brought this action to recover the balance of the fifty thousand dollars and interest.

One of the learned judges of the Appellate Division thus states the question of law presented in this case: " Can a wife enforce payment in her own name where the husband renders valuable services and stipulates with the person to whom the

same are rendered that compensation therefor shall be made, not to him, but to her?"

In answering this question in the negative, the main positions of the court below may be briefly stated.

While admitting that there is a distinct class of cases where promises have been made to a father, or other near relative for the benefit of a child, or other dependent relative, in which the person for whose benefit the promise was made has been permitted to maintain an action for the breach of it, and further admitting, for argument's sake, that the duty and obligation of the husband to the wife is, as a consideration, quite equal to the duty and obligation of the father to the child, yet the fact still remains in the case at bar that this is not a contract looking towards the discharge of the obligation which the husband owed to support the wife, and must, therefore, be supported, if at all, upon the mere relation of husband and wife.

The learned court then states that it has found no authority for holding that a promise made to the husband by a third person for the benefit of his wife, which was not intended to provide for her support, or to discharge the husband's duty in that regard, could be enforced by the wife.

It is also intimated that there is no disposition to extend the principle of some of the cases relating to father and child to any other relationship.

As to this latter suggestion we do not think it will be seriously questioned, on principle, that the relation of husband and wife is fully equal to that of parent and child as a consideration to support a promise.

Before discussing this appeal in the light of the authorities, we have to say that, in our judgment, the learned Appellate Division have failed to give due weight to certain controlling features of this case.

In the first place, the question formulated by the court below does not contain what we regard as one of the most important points disclosed by the evidence, to wit, the large equitable interest the plaintiff had in this scheme to attack

the will under the provisions of the agreement made to raise funds for that purpose. This is not the case simply of a husband rendering valuable services to a third party upon the latter's promise to pay the compensation, not to him, but to his wife.

While this case embraces that feature it involves the further element of the wife's joint interest in the scheme to attack the will.

It may fairly be inferred from this record that the defendant was powerless to conduct the action he had begun unless some one furnished him the funds.

This assistance was rendered by Buchanan and Dun, upon the express agreement and understanding that the plaintiff should receive, in case of success, fifty thousand dollars from defendant as part of her share of the estate, and generous treatment from his brothers and sisters. Plaintiff, in equity and good conscience, as an adopted child of Moses Y. Tilden, was entitled to come in and share with the other heirs and next of kin the large fund that had been freed from the provisions of the will. When this equitable right, or interest, is coupled with the relation of husband and wife, we have presented a situation that affords ample consideration for the contract sued upon — a situation that distinguishes this action from any of the cases where the party suing upon a promise rests exclusively upon a debt or duty owed him by the promisee.

Another general feature of this case, to which we think the court below has failed to give due prominence, is the extent of the legal and moral obligation resting upon a husband to support and provide for his wife.

A brief quotation from one of the opinions below will make this point clear :

The court says : " It is quite true that the husband is under an obligation to support the wife, and it may be that any contract which he makes with a third party, having for its object the carrying out of that obligation, would be enforced in the courts."

Then coming to the case at bar the court continues : " There

is no obligation, legal or equitable, here on the part of the husband towards the wife to entitle her to the performance of this contract.

" This was not a contract for her support, nor was it one to do anything which, under any circumstances, the husband could be compelled to do. It was simply an obligation on the part of the defendant to pay the plaintiff a sum of money, as an independent fortune for her separate estate, in case the husband rendered some service to him. So far as the plaintiff and her husband were concerned as to this contract there were no legal relations between them; they occupied no different relations from that of any other man and woman," etc., etc.

It seems to us that this is an entire misconception of the duties and relations existing between man and wife. It is, in effect, said that it is only the duty of bare maintenance that is a consideration sufficient to support the promise of a third party.

We are of opinion that a husband rests under other and far higher moral and legal obligations that the law will recognize as a sufficient consideration to support a covenant in favor of the wife.

There is no evidence in this case to bear out the statement that this was not a contract for the wife's support; but assuming that she had food, raiment and shelter — the necessaries of life — can it be said that these represent the full measure of the moral and legal obligations imposed upon a husband by the common law?

Is it not his bounden duty, if opportunity offers, to provide for his wife against that day when he may be incapacitated by disease or removed by death? If, as in the case at bar, the husband seeks to provide for his wife, beyond the duty of furnishing food and shelter, by securing a fund to which she is equitably entitled, that may perpetuate his protecting care after he has departed this life, shall it be said that this is not an obligation that a court can recognize as a sufficient consideration to support a covenant on her behalf? We are of opinion that this broader view of the duties and obligations of

a husband is to be invoked in determining the rights of this plaintiff.

We come then to a consideration of this case in the light of precedent. The court below recognized the strong equities of the plaintiff's case and expressed regret that the action is not sustainable in her behalf.

Our full discussion of the facts and the position of the court below discloses, we think, a very strong case in favor of the plaintiff maintaining this action.

While it is true that for more than two hundred years the courts of England and this country have been discussing the vexed question of when a party may sue upon a promise made for his benefit to a third party, yet we are of opinion that under the peculiar facts of this case the plaintiff can recover by invoking legal principles that are well established by authority.

In order to maintain the plaintiff's cause of action it is not necessary to invoke the principle established by *Lawrence* v. *Fox* (20 N. Y. 268) and the cases that have followed it in this state, to the effect that an action lies on a promise made by the defendant upon valid consideration to a third person for the benefit of the plaintiff, although the latter was not privy to it. It will be recalled in that case one Holly loaned the defendant Fox money, stating at the same time that he owed the amount to the plaintiff Lawrence for money borrowed which he had agreed to pay the then next day ; the defendant, in consideration of the loan to him, agreed to pay plaintiff the then next day.

This court in holding that the plaintiff Lawrence could enforce that promise in an action at law established a legal principle that the courts of England have never recognized.

The plaintiff in the case at bar, if driven to it, might doubtless derive aid and comfort from the doctrine laid down in *Lawrence* v. *Fox* by parity of reasoning, but we think her case rests upon very different principles.

The first case to be considered is *Dutton* v. *Poole* (1 Ventris, 318–332), decided in England in the reign of Charles II.

The plaintiff declared in assumpsit that his wife's father being seized of certain lands now descended to the defendant,

and being about to cut a thousand pounds worth of timber to raise a portion for his daughter, the defendant promised to the father, in consideration that he would forbear to fell the timber, that he would pay the daughter one thousand pounds.

After verdict for the plaintiff on non-assumpsit, it was moved in arrest of judgment that the father ought to have brought the action and not the husband and wife. The court said : " It might have been another case if the money had been to have been paid to a stranger; but there is such a nearness of relation between the father and the child, and 'tis a kind of debt to the child to be provided for, that the plaintiff is plainly concerned."

The judgment was affirmed in the Exchequer. (2 Lev. 212; Raym. 302.)

In one of the opinions of the Appellate Division in the case at bar, it is stated that *Dutton* v. *Poole* has been repudiated by the English courts in *Tweddle* v. *Atkinson* (101 Eng. C. L. R. 393).

A careful examination of this latter case shows that Justice BLACKBURN, while attacking *Dutton* v. *Poole*, says: " We cannot overrule a decision of the Exchequer Chamber."

Lord MANSFIELD said of *Dutton* v. *Poole*, a hundred years later, that it was difficult to conceive how a doubt could have been entertained about the case. (*Martyn* v. *Hind*, Cowp. 443; Doug. 142.) It has also been repeatedly followed in this state.

The learned counsel for the defendant, in an able and comprehensive brief, complains that *Dutton* v. *Poole* has, on several occasions, been cited to sustain the broad doctrine that a stranger to the consideration and to the promise may maintain an action on a contract. He points out that such an alleged erroneous citation appears in *Schemerhorn* v. *Vanderheyden* (1 Johns. 139), and that it has led to confusion in subsequent cases. We are not concerned at this time whether this is a just criticism or not, as there can be no doubt that *Dutton* v. *Poole* rests upon the nearness of the relation between father and child, and to this extent is undoubted authority.

In *Shepard* v. *Shepard* (7 Johns. Ch. 57), *Dutton* v. *Poole* is approved and followed, and Chancellor KENT also recognizes the principle contended for in this case, that the consideration of natural affection, and to make sure the maintenance of a wife in case she survived her husband, is " very meritorious."

There were two principal points decided by Chancellor KENT in this case.

The first being that although a deed from a husband directly to his wife is void in law, yet, where the conveyance of the husband is for the purpose of making a suitable provision for the wife " in case she should survive him," equity will lend its aid to enforce its provisions.

The second point held that where a husband conveyed land to his son, for a nominal sum, on his covenanting to pay an annuity to his mother during her widowhood, that the wife could sue on this covenant so made for her benefit, and that an attempted release of the son from the covenant by the husband, in his lifetime, was fraudulent and void.

The learned chancellor said : " But if the deed of 1808 was out of the question, I should then have no difficulty in declaring that the defendant was bound to pay her the stipulated annuity, or the gross sum of four hundred dollars in lieu of it, on her releasing," etc. * * * " The relationship between husband and wife was sufficient to entitle the plaintiff to her action upon the covenant to her husband, and which was made for her benefit. The consideration enured from the husband, and arose from the obligations of that relation," etc.

The chancellor then comments approvingly and at length upon *Dutton* v. *Poole*, points out the subsequent commendation of it by Lord MANSFIELD, and concludes by saying :

" The same doctrine appears in the more early case of *Starkey* v. *Mill* (Sty. 296), and it has had the sanction also of Mr. Justice BULLER in *Marchington* v. *Vernon* (1 Bos. & Pul. 101, in *notis*), but it is quite unnecessary to dwell longer on this second point."

While the chancellor allowed relief to the plaintiff by enforcing her deed in equity, yet he distinctly held that she had the additional remedy of an action on the covenant between her husband and the son if there were no deed, by reason of the relations and obligations of husband and wife, resting his decision squarely on the case of *Dutton* v. *Poole.*

With this case approved by Lord MANSFIELD, Justice BULLER and Chancellor KENT and followed in this state, it is not of controlling importance that the doctrine of this and other early cases is said to be questioned in England at the present day.

In a jurisdiction where the doctrine of *Lawrence* v. *Fox* is the settled law, there is no difficulty in sustaining both in law and equity the kindred principle announced in *Dutton* v. *Poole.*

It is quite impossible to follow the learned counsel on both sides of this case in the exceedingly interesting and exhaustive discussion of the questions involved, as the limits of an ordinary opinion forbid it.

We shall content ourselves with the citation of but one more case. In *Todd* v. *Weber* (95 N. Y. 181), this court held that the relation of parent and child, even between a father and his illegitimate daughter, was a sufficient consideration for a contract made by him with the relatives of his unfortunate child to pay for her support and maintenance, and that she could enforce it by action. The learned judge writing for the court in that case, in an opinion that does honor to his heart as well as his intellect, quotes with approval *Dutton* v. *Poole.*

We see no valid distinction in principle between the relation of parent and child and husband and wife as affording an ample consideration for covenants inuring to the benefit of the child or wife.

The relation of husband and wife has been twice recognized in this state in cases just cited, as a sufficient consideration for supporting a covenant in the wife's favor and amply sustains the plaintiff's cause of action in the case at bar.

This court has recently held that while the common-law rule that husband and wife are one has been to some extent abro-

gated by special legislation, yet there are situations where that unity still exists. ( *Wetmore* v. *Wetmore*, 149 N. Y. 520, 529 ; *Bertles* .v. *Nunan*, 92 N. Y. 152.)

The case before us illustrates a situation where that unity survives for the purpose of aiding the wife to enforce a covenant for her benefit made by her husband, and which equity and good conscience approve.

The Appellate Division refer to *Durnherr* v. *Rau* (135 N. Y. 219) as " a case while not directly in point is in its controlling principles adverse to the plaintiff's right to maintain this action."

We think that case has no application to the one before us. The husband of plaintiff conveyed to the defendant certain premises, the latter covenanting to pay all incumbrances on the premises " by mortgage or otherwise."

The deed declared that the wife (the plaintiff) reserved her right of dower. By the foreclosure of mortgages on the premises, existing at the time of the conveyance and in which the wife joined, her dower interest was extinguished. The wife sued on the defendant's covenant in the deed to pay all incumbrances and sought to recover the value of her dower interest cut off by the foreclosure. This court held that the covenant was with the husband alone, as the wife was not bound to pay the mortgages, and that the joinder of the wife in the mortgages was a voluntary surrender of her right of dower for the benefit of the husband, and bound her interest to the extent necessary to protect the securities.

It is perfectly clear under this state of facts that the husband rested under no duty to protect the wife's dower interest. There was no legal or equitable obligation which the wife could lay hold of to enable her to sue on the covenant. The court points out that it is not sufficient that the performance of a covenant may benefit a third person, but it must have been entered into for his benefit.

The case at bar is decided upon its peculiar facts. We do not hold that the mere relation of husband and wife alone constituted a sufficient consideration to enable the plaintiff to

maintain this action. We deem it unnecessary to decide that question at this time. What we do hold is, that the equities of the plaintiff were such that when considered in connection with the duty of her husband to provide for her future, and with that purpose in view, the money was procured for the defendant to institute and pursue the necessary litigation to secure the fund to which her equities related, all taken together, were sufficient to sustain the plaintiff's action.

The order of the Appellate Division granting a new trial and the judgment entered thereon should be reversed and the original judgment in favor of the plaintiff and against the defendant affirmed, with costs in all the courts.

GRAY, J. (dissenting). I think that the order appealed from should be affirmed and that any other doctrine than that laid down by the Appellate Division would be without support in principle, or in the cases. The defendant needed money, in order to prosecute an action to set aside certain provisions of the will of Samuel J. Tilden, deceased. He applied to the plaintiff's husband for that purpose, and the latter procured Dun to advance the money. The agreement between the defendant and the plaintiff's husband was that, in the event of the success of the action, in view of the assistance rendered by the latter, as well as by Dun, the defendant would become responsible for the payment to the plaintiff of the sum of $50,000. The action was successful and the defendant repaid the money loaned. In addition, he gave to the plaintiff a sum of $8,500; but she has brought this action to compel the payment by the defendant of the whole sum mentioned in the agreement.

The question is, whether the plaintiff had a cause of action upon the contract. It seems to me that this case is not brought within that class of cases, wherein a third person is entitled to enforce a promise which has been made by one person to another; because of the absence of the essential element that some liability or duty must exist from the promisee to such third person in connection therewith. As it was held

in *Durnherr* v. *Rau* (135 N. Y. 219), the rule is that to permit a third party to enforce such a promise, the promisee must have a legal interest that the covenant be performed in favor of the party claiming performance. How was that the case here? Could it be because of the general obligation on the part of the plaintiff's husband to support and maintain her? That, of course, is a well-recognized obligation in the law; but did the contract in question have that for its object? I cannot so regard it. It related solely to the payment of a large sum of money contingently upon the success of a certain litigation, of which the defendant was the promoter, and promised a reward or compensation to the party with whom made for his aid in furnishing the needed moneys. It is perfectly clear that this contract was not based upon marital obligations; but that it was simply a mode, suggested by the husband and adopted by both parties, for the payment by the defendant of the consideration for his, the plaintiff's husband's, services in the matter. It does not appear that the plaintiff's cause of action has any other basis than the mere fact of the marital relation. While that relation imposes strong legal and moral obligations upon the husband, it is difficult to see that they involve a liability on his part to provide a separate estate for his wife and, yet, if there is not that liability, what liability was there towards the plaintiff, which furnished the element, required to exist in order that the third person, the plaintiff here, might claim the right to enforce the promise? It is not necessary that the wife should be privy to the consideration of the promise; but it is necessary that the promisee, her husband, should owe some debt or duty to her, in connection with the promise, to enable her to sue upon it.

I think that the insuperable legal objection to the plaintiff's cause of action is, that the contract in question was not one which looked towards the discharge of any obligation owing by him to her and, therefore, is not enforceable upon the doctrine which underlies the cases where, as in the relation of parent and child, the promisee owed a duty which the contract was supposed to meet. I am prepared to admit, as it is argued,

that we should recognize the obligation of the husband to support the wife to be as meritorious as the obligation of the parent to support the child, and, if this contract could be regarded in that light, I might be prepared to extend to the present case the principle of the cases referred to. But, as previously suggested, the relationship between the parties here does not help us out in endeavoring to find support for the plaintiff's cause of action; for the reason that the contract, which is sought to be enforced, does not bear upon the husband's obligation and is not connected with it, but simply provides for the payment of a sum of money as a compensation for his services in the event of success.

In view of the more elaborate discussion in the opinion below, I think nothing more need be said and that the order should be affirmed.

HAIGHT, MARTIN and VANN, JJ., concur with BARTLETT, J., for reversal. PARKER, Ch. J., and O'BRIEN, J., concur with GRAY, J., for affirmance.

Order reversed, etc.