In the Matter of the Estate of SULLIVAN M. PINE, Deceased.

Surrogate's Court, Westchester County, December 8, 1933.

*Peck & Schmidt*, for the petitioners.

*Edgar Hirschberg* [*Thomas P. McLaughlin* of counsel], for the State Tax Commission.

SLATER, S. This matter is before me in my ministerial capacity upon an application for an order assessing tax on the estate and asking for a construction of an agreement, dated the 31st day of December, 1925, and executed by the decedent and the Lawyers Westchester Mortgage and Title Company of White Plains, N. Y., in order to determine whether certain funds deposited by the decedent with the said company pursuant to its terms are taxable. The following is a copy of the agreement entered into between the decedent and the said mortgage company:

" THIS AGREEMENT entered into this 31st day of December, 1925, by and between Sullivan M. Pine, residing at King Street, Port Chester, New York, party of the first part and the Lawyers Westchester Mortgage and Title Company, a domestic corporation having its principal place of business at 160 Main Street, White Plains, New York, party of the second part,

" *Witnesseth*, that whereas, the party of the first part is desirous of investing one hundred thousand ($100,000.00) dollars in guaranteed mortgage certificates of the Lawyers Westchester Mortgage and Title Company,

" Now Therefore, in order that said investment may be in such manner and under such conditions as may be mutually agreed upon by and between the parties hereto and in consideration of one ($1.00) dollar in hand paid and further consideration of payment of interest by said Lawyers Westchester Mortgage and Title Company on said amount at the rate of five and one-half ($5\frac{1}{2}\%$) per cent per annum payable semi-annually, as will be hereinafter more particularly referred to, the party of the first part agrees to turn over to the Lawyers Westchester Mortgage and Title Company, the sum of one hundred thousand ($100,000.00) dollars and the said Company agrees with the party of the first part to guarantee payment of the said principal sum with interest thereon at five and one-half ($5\frac{1}{2}\%$) per cent, semi-annually for the period of twenty-five (25) years.

"And the said Lawyers Westchester Mortgage and Title Company further agrees to issue its guaranteed mortgages certificates in the sum of one hundred thousand ($100,000.00) dollars, as follows, viz:—

"To James T. Pine, King Street, Port Chester, New
 York.................................... $50,000.00
"To Mildred P. Martin, of Midway, Kentucky... 50,000.00

"The interest on said fifty thousand ($50,000.00) dollars upon the guaranteed mortgage certificates issued to James T. Pine shall be paid semi-annually during his life time and upon his death to his children or the issue of any deceased child or children then surviving him if such event occurs before the expiration of twenty-five years.

"The interest on said fifty thousand ($50,000.00) dollars upon the guaranteed mortgage certificate issued to Mildred P. Martin shall be paid semi-annually during her life time and upon her death to her children or the issue of any deceased child or children then surviving her if such event occurs before the expiration of twenty-five (25) years.

"It is further agreed between the parties hereto that said certificates shall remain in the possession of the party of the second part for the said period of twenty-five (25) years subject however to examination, audit and inspection.

"The Lawyers Westchester Mortgage & Title Company reserves unto itself the right in event that the principal of any mortgage upon which certificates have been issued being paid, to issue new certificates in like sum upon a new mortgage or mortgages and to change the rate of interest January 1st, 1936, and January 1st, 1946, if the prevailing rate of interest has been reduced from six (6%) per cent. That on January 1st, 1951, said certificates so held be turned over to James T. Pine and Mildred P. Martin fully guaranteed as to principal and interest by the Lawyers Westchester Mortgage and Title Company.

"It is understood that if the principal sum is paid to the party of the second part in installments that James T. Pine and Mildred P. Martin shall be credited with equal amounts."

Sullivan M. Pine died April 18, 1933. He left a will which was admitted to probate by the surrogate of Westchester county. Details of the will are immaterial. It is sufficient to say that the instant proceeding is instituted to fix the amount of the tax, as well as to determine whether the money deposited under said agreement is a part of the estate and taxable. It is conceded by attorneys for the estate and for the State Tax Commission that the attempted

trust and the consequent tie-up of the sum of $100,000 for a period of twenty-five years is void. It is the contention of the State Tax Commission that the whole agreement is void. With this I do not agree. A contract may be valid in part and void in part. The contract between the decedent and the mortgage company as to the fund, its investment and the beneficiaries remains intact. The contract is to the effect that the decedent shall turn over $100,000 and the company shall invest it in its guaranteed mortgage certificates, with interest at the rate of five and one-half per cent per annum payable semi-annually. The money was turned over and the mortgage certificates were issued to James T. Pine and Mildred P. Martin, the children of the decedent Sullivan M. Pine. The company agrees to guarantee payment of said principal sum with interest thereon, and said company further agrees to issue its guaranteed mortgage certificates as follows: James T. Pine, $50,000; Mildred P. Martin, $50,000.

There is further agreement with regard to the possession of the certificates, with a reservation to the company to substitute certificates, and the further agreement as to turning them over on January 1, 1951, to said James T. Pine and Mildred P. Martin.

Contracts for the benefit of third persons have been the source of much judicial discussion. The legal doctrine which accords the right of third persons on such contracts, in this instance the son and daughter of the decedent, is set out in *Lawrence* v. *Fox* (20 N. Y. 268). The more recent case of *Seaver* v. *Ransom* (224 N. Y. 233, 236, 240), amplifying *Lawrence* v. *Fox*, says: " The course of the late decisions is to enlarge not to limit the effect of that case."

There has been a gradual widening of the doctrine of *Lawrence* v. *Fox* (*supra*), until today the beneficiary of a promise clearly designated as such is seldom left without a remedy. ( *Ultramares Corp.* v. *Touche*, 255 N. Y. 170–180.) In every case in which action has been sustained there has been a debt or *duty owing* to the party claiming to sue on the promise, and it has been held that the right of a third person to recover on a contract made by other parties for his benefit must rest upon the peculiar circumstances of each case. Judge POUND, writing for the court in *Seaver* v. *Ransom* (*supra*), defined the right of a beneficiary to sue on contracts made for his benefit, referring *first* to cases where there was a pecuniary obligation running from the promisee to the beneficiary, and, *second*, to cases where the contract was made for the benefit of the wife, as in *Buchanan* v. *Tilden* (158 N. Y. 109) and *Bouton* v. *Welch* (170 id. 554); affianced wife (*De Cicco* v. *Schweizer*, 221 id. 431); for a child (*Todd* v. *Weber*, 95 id. 181, 193; *Matter of Kidd*, 188 id. 274) of a party to the contract; *third*, to public contract·cases. (See

*Davison* v. *Lissberger*, [2d Dept.] 228 App. Div. 831; affd., 255 N. Y. 597; *Knowles* v. *Erwin*, 43 Hun, 150; affd., 124 N. Y. 633, a father and child case.)

In the instant case the beneficiaries of the contract are the two children of the decedent. It was the love and affection or the moral sense of the husband and the parent that imposed such obligations in the cases cited. The contract was intended for the benefit of the two children. (*Durnherr* v. *Rau*, 135 N. Y. 219.) When it came to their knowledge they had the right to adopt and enforce it. (*Gifford* v. *Corrigan*, 117 N. Y. 258; *Buchanan* v. *Tilden, supra; Lawrence* v. *Fox, supra.*) It was a legal agreement.

It would seem that the contract affords a remedy to individuals belonging to one of the classes for whose benefit it was given. There was a plain intent by the decedent to secure some benefit to his two children. (*Skinner Bros. Mfg. Co., Inc.,* v. *Shevlin E. Co., Inc.,* 231 App. Div. 656, 658; affd., 257 N. Y. 562.)

The claim did not depend upon a deed or grant, nor was it testamentary in its character, but was the outgrowth of a contract founded upon a valuable consideration, is enforcible, and, therefore, the $100,000 named in the contract is not a part of the estate now subject to tax. The contract created a gift *in præsenti* to be executed at once. (*Watkins* v. *Reynolds*, 123 N. Y. 211.) The devolution of the property did not take place under the will of the decedent, but such devolution did take place under the contract above referred to.

The attorney for the estate has submitted the valuation of stocks and bonds left by the decedent. Unless objection is made by the attorney for the State Tax Commission, the quotations of security values so given will be accepted.

Submit *pro forma* order of taxation in conformity with this opinion.