FIRST TRUST COMPANY OF ALBANY, Plaintiff, *v.* HUGH A. ARNOLD et al., Defendants.

Supreme Court, Special Term, Albany County, December 29, 1942.

*Edward S. Rooney* for plaintiff.

*John C. Looby* for defendants.

MURRAY, J. Plaintiff moves for an order striking out the answer of defendant, Hugh A. Arnold, and for judgment against him, pursuant to rule 113 of the Rules of Civil Practice. This action, commenced July 14, 1941, is on a promissory note for the sum of $12,430 made by defendant, Hugh A. Arnold, and endorsed by his wife, the defendant Lillian Chalmers Arnold.

The making, execution, endorsement, and delivery of the note are admitted. None of the material allegations of the complaint are denied by defendant, Hugh A. Arnold, or by Lillian Chalmers Arnold. The answer of Lillian Chalmers Arnold alleges that she filed a petition in bankruptcy in the United States District Court for the Northern District of New York, July 17, 1941. She demands judgment that plaintiff's complaint be dismissed, or, in the alternative, that all proceedings against her be stayed pending hearing and determination of her bankruptcy in the United States Court.

It is admitted that on or about the 7th day of March, 1941, defendants, Hugh A. Arnold and his wife, owed plaintiff bank $16,662.77, and Hugh A. Arnold owed The National Commercial Bank and Trust Company of Albany in excess of $53,000.

Defendant, Hugh A. Arnold, has interposed in his answer affirmative defenses and counterclaims which are unique, strange, and singular. He alleges that up to the 11th day of April, 1941, he was a director and vice-president of plaintiff bank. That he was advised by plaintiff that it was imperative, because of his unsecured indebtedness to it and The National Commercial Bank, to give his immediate attention and consideration to such indebtedness with a view of reducing same.

That on or about the 7th day of March, 1941, Mr. Edward S. Rooney, a lawyer, agent, and director of plaintiff bank, voluntarily called at The National Commercial Bank and discussed with its President, Mr. Herbert J. Kneip, the indebtedness of

Hugh A. Arnold, defendant, to both banks. That Mr. Rooney informed and assured Mr. Kneip that if The National Commercial Bank would forgive the unsecured indebtedness of Arnold to it, plaintiff would also forgive Arnold's unsecured indebtedness to it, and also would retain him in its employ at a reduced salary. That Mr. Kneip informed Mr. Rooney the executive committee of The National Commercial Bank would meet March 14, 1941, at which time the proposal of Mr. Rooney would be then considered. That he, Mr. Kneip, would recommend to such executive committee that defendant Arnold's debt be forgiven by The National Commercial Bank on the basis proposed by Mr. Rooney.

That Mr. Rooney telephoned Mr. Arnold at his home that he had interviewed the President of The National Commercial Bank and his (Arnold's) obligation to such bank had been cancelled, and this news should make him feel a great deal better.

Later, on March 15, 1941, Mr. Rooney and a Mr. Otto C. Van Decar, director of plaintiff bank, called at the home of Mr. Arnold and repeated that his entire unsecured indebtedness to The National Commercial Bank had been cancelled. That if Mr. Arnold would pay plaintiff $5,000, his indebtedness to plaintiff bank would also be cancelled, and his employment continued by plaintiff. Defendant, Hugh A. Arnold, stated that he was without funds and could not raise $5,000. That, then, Mr. Rooney and Mr. VanDecar suggested the names of various persons, including relatives of Mr. Arnold, who they thought might give him money, after which conversation Mr. Arnold promised " To see what he could do about obtaining the sum of $5,000."

Defendant, Hugh A. Arnold, claims that the next day the picture as to his financial welfare was changed, because Mr. Rooney informed him that the directors of plaintiff had passed a resolution which would require Mr. Arnold to raise $10,000 instead of $5,000. That on the 14th day of March, 1941, Mr. Kneip informed Mr. Rooney that the executive committee of The National Commercial Bank, in view of the representations made by Mr. Rooney and solely thereon, had voted in favor of cancelling defendant Hugh A. Arnold's indebtedness to The National Commercial Bank.

Defendant, Hugh A. Arnold, claims he was ignorant of the details of the arrangements between Mr. Rooney and Mr. Kneip, and had been kept uninformed by plaintiff of same until the 18th day of March, 1941, when Mr. Kneip told him the terms

of the agreement. Defendant, Hugh A. Arnold, asserts in his answer that The National Commercial Bank relied upon " the representations and promises of Edward S. Rooney," made to Mr. Kneip.

Defendant, Hugh A. Arnold, pleads he would have been guilty of deception upon The National Commercial Bank if he paid plaintiff any money whatever on his debt. That he informed plaintiff he would not comply with the terms of the resolution of plaintiff bank that he pay it the sum of $10,000 to be discharged of the debt he owed it. He further alleges that he was dismissed by plaintiff from its employ April 12, 1941. That plaintiff applied his wages or salary on his debt to it.

Defendant, Hugh A. Arnold, further alleges that he deems himself entitled to specific performance of the agreement that was made between Mr. Rooney and Mr. Kneip, each acting for their respective banks, for the cancellation of his indebtedness to plaintiff. He charges plaintiff with the attempt of " unjustly enriching itself at his expense and other creditors," and because of its " deception and guile," it is estopped from further prosecuting this action. That plaintiff owes defendant, Hugh A. Arnold, for services rendered by him the sum of $252, with interest from April 12, 1941.

He demands judgment that plaintiff's complaint be dismissed. That he be awarded a judgment compelling specific performance of the alleged agreement made between plaintiff and The National Commercial Bank and Trust Company of Albany, N. Y. That plaintiff be compelled to cancel the entire indebtedness of defendant, Hugh A. Arnold, to it. That he be continued in the employment of plaintiff. That he have a money judgment against plaintiff in the sum of $252 with interest, and the costs and disbursements of the action.

The fantastic narrative stated in the answer of defendant, Hugh A. Arnold, reminds one of the words of the philosopher, Bacon: " Prosperity is not without many fears and distastes, and adversity is not without comforts and hopes."

Banks and bankers from time out of mind have been pilloried and held up as cold, bloodless, and relentless creatures. Popular judgment and tradition is that banks have ever demanded their pound of flesh. The answer of Mr. Arnold would have us believe such an estimate fallacious. His answer transforms banks into eleemosynary institutions which graciously forgive debts and give away depositors' money freely and without restraint, and which, if they refuse to continue such policy of benevolence to

those in distress, will be compelled to " specifically perform " by courts.

Plaintiff denies specifically that any such agreement as claimed by Arnold was ever made. There is an absence of proof by affidavit, or otherwise, to show that The National Commercial Bank and Trust Company ever did actually forgive Hugh A. Arnold's debt to it. Plaintiff submits proof that such debt never was in fact forgiven. The President of the National Commercial Bank, Mr. Kneip, stated to Mr. B. Jermain Savage, Chairman of the Board of Directors of the First Trust Company, that The National Commercial Bank had done nothing to forgive Arnold's indebtedness; that The National Commercial Bank had not altered its position so far as Mr. Arnold was concerned, and had released none of the collateral it held as security, and that the rights of The National Commercial Bank against Mr. Arnold were just the same as they were on March 25, 1941, the day Mr. Rooney visited The National Commercial Bank and talked with Mr. Kneip, its President. The affidavit made by Mr. Savage is not disputed or challenged by Mr. Arnold as to the facts set forth therein.

Unless The National Commercial Bank actually did cancel Hugh A. Arnold's unsecured indebtedness to it, plaintiff was not obliged to wipe out Arnold's indebtedness to it. It would have been an easy and simple matter for Mr. Arnold to have prepared an affidavit or a statement for The National Commercial Bank to sign, that such bank had cancelled his debt to it. No such paper has been furnished or submitted to the court. The facts claimed by Hugh A. Arnold tax credulity to the limit and seem preposterous on their face.

It is ridiculous to believe that a person who owes over $70,000 to two banks and who can discharge his debts to both banks fully by paying $10,000, and in addition keep his job in one of them, would refuse to do so solely on the ground that by doing so one of the banks would unjustly enrich itself at his expense and his creditors. The average mortal, unless devoid of intelligence, would respond and accept such a proposition to cancel debts with joy and thanksgiving.

While it is not the function of the court on such a motion as this to pass upon disputed questions of fact, it is the duty of the court to consider the entire situation and strike out sham or false pleas. Though caution must be exercised in awarding summary judgment, when the court becomes convinced that the defense advanced is false or dishonest or devoid of substance or interposed merely for delay, it should not hesitate to pronounce

judgment accordingly. (*Manhattan Paper Co., Inc.,* v. *Bayer,* 147 Misc. 227.)

The court must direct summary judgment when there is no genuine issue of a material fact which requires formal trial.

This court is convinced that even if defendant, Hugh A. Arnold, could prove everything he alleges in his answer and counterclaims, it is no defense to the cause of action as alleged by plaintiff. Neither the plaintiff nor The National Commercial Bank was indebted to defendant, Hugh A. Arnold. No law is cited by Mr. Arnold which confers on the directors of a bank the right to give away the moneys of its depositors or to forgive without consideration a debt owing by a director to his own bank. There is no such law. It is an affront to common sense and unthinkable that the law would for an instant tolerate such practices. If such a process were followed consistently by directors, it would not take long to drain every bank dry.

The theory of law advanced by defendant, Hugh A. Arnold, that he is excused from paying plaintiff, merely because he is the beneficiary of an agreement made by two banks in his behalf, is unsound. (*Seaver* v. *Ransom,* 224 N. Y. 233.) It is the claim of defendant, Mr. Arnold, that he is a donee beneficiary and, because he is such, he is entitled to a discharge of his indebtedness to plaintiff. The citations in the brief of defendants on their legal proposition are to a large extent quotations from Williston on Contracts. They are not in point.

An examination of the law reveals that a donee beneficiary must be related by blood or marriage in order to avail himself of a contract made for his benefit or the contract must be a public benefit contract. (*Buchanan* v. *Tilden,* 158 N. Y. 109; *DeCicco* v. *Schweizer,* 221 N. Y. 431; *Seaver* v. *Ransom, supra; Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330.)

I am satisfied there is nothing in truth to be tried. There is no genuine issue.

Plaintiff is entitled to summary judgment. (*General Investment Co.* v. *Interborough R. T. Co.,* 235 N. Y. 133.) The remedy of summary judgment is administered in furtherance of justice, and a formal trial of this action would be a useless expense of time and money. Judgment for plaintiff.

Submit order.