## CONDON v. NEW ROCHELLE WATER CO.

(Supreme Court, Special Term, Westchester County.   November, 1908.)

1. WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—WATER RATES—CONTRACTS.

Where a water company by its franchise agreement with a village contracted to furnish private consumers with water at the rate charged by its predecessor, during the period of its franchise, it is bound by its contract for the whole period and cannot defend an action by a consumer to compel it to furnish water at those rates by showing that they are unreasonable and confiscatory.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 292, 294;  Dec. Dig. § 203.*]

2. CONTRACTS (§ 169*)—CONSTRUCTION—CONTEMPORANEOUS SITUATION.

Contracts must be read and given a reasonable construction in the light of the situation of the parties when the contract was made.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752;  Dec. Dig. § 169.*]

3. WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—FRANCHISE CONTRACT—CONSTRUCTION.

Where, at the time a water company in its franchise agreement with a village contracted to furnish water at the rates charged by its predecessor, the great majority of the houses were suburban cottages and were furnished water with five-eighths and three-fourths inch connection with the main, the intention of the parties was that the size of such connections should remain as they then were, so that a consumer was not entitled to use a connection of a greater diameter than three-fourths inch during the continuance of the contract.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 292, 294;  Dec. Dig. § 203.*]

4. STIPULATIONS (§ 11*)—VALIDITY—MISTAKE.

Where a stipulation, made in an action between a water company and a consumer relative to the rates and the size of the connection the consumer could use, was made by the company through a mistake as to the nature of the connection or the terms upon which it was permitted, the stipulation was not binding.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 23;  Dec. Dig. § 11.*]

5. COSTS (§ 23*)—RIGHT OF PREVAILING PARTY—PARTIAL SUCCESS.

Where both parties claimed more than they were entitled to, costs will not be allowed to either.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 74;  Dec. Dig. § 23.*]

Action by Martin J. Condon against the New Rochelle Water Company.   Judgment in part for each party pursuant to the opinion.

Henry G. K. Heath, for plaintiff.

Whitridge, Butler & Rice, for defendant.

MILLS, J.   This is an action brought by the plaintiff, a resident and house owner and occupant in the village of Pelham Manor, Westchester county, against the defendant, to permanently enjoin the defendant from exacting from the plaintiff payment of charges for supplying water to plaintiff's premises, within said village, in excess of certain specified rates, and also permanently enjoining the defendant from refusing to supply water to plaintiff's said premises.   To several of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

separate defenses pleaded in the amended answer the plaintiff demurred. The issues of law and fact were brought to trial before me at Special Term and are now to be determined. It is incumbent upon the court first to decide the issues of law presented by the several demurrers.

First, demurrer to the second defense: The question presented by this demurrer is substantially the same as was presented to me about a year ago in the mandamus proceeding entitled the "People of the State of New York ex rel. the Village of Pelham Manor v. New Rochelle Water Company," by the demurrer to the fifteenth subdivision of the second amended return, constituting the alleged fifth separate defense. I there overruled such demurrer for reasons stated by me in an opinion written and filed at that time and reported in 58 Misc. Rep. 287, 292, 110 N. Y. Supp. 1089. As the counsel in that case were the same as the counsel in this, I deem it sufficient to here refer to such opinion without attempting to restate the reasons of my conclusion. The demurrer to the second defense is therefore overruled. The disposition of this demurrer appears, however, to be of no practical importance, because the evidence does not at all establish the facts alleged in the defense.

Second, demurrer to the third defense: Here, again, the question presented by this demurrer was also presented by a demurrer in the mandamus proceeding above recited, viz., by the demurrer therein "to the sixteenth subdivision of the second amended return, constituting the alleged sixth separate defense." Such demurrer was there overruled for reasons stated in the opinion above referred to. See 58 Misc. Rep. 293, 110 N. Y. Supp. 1089.

Third, demurrer to the fifth defense: The gist of the allegations of this defense is that the rates alleged by the plaintiff to have been established by the franchise and hydrant agreement of October, 1894, are not fair and reasonable for the service required; and that to compel the defendant to furnish to the plaintiff water at such rates would be unreasonable and amount to confiscation of its property. The contention of the defendant here plainly is that, notwithstanding that the terms of such agreement, as to the rates to private consumers, may then have been binding upon the defendant's predecessor and still in a general sense be binding upon the defendant itself as having succeeded to the interests and obligations of such predecessor, still the defendant is entitled now to have the judgment of the court upon the question whether or not such terms are not now unreasonable, and the defendant entitled to charge private consumers at higher rates.

In support of this contention that such rates are always subject, in behalf of either party to such a contract, to a review and readjustment by the court according to the standard of present reasonableness, the defendant cites and relies upon the decision of the Appellate Division in this, the Second Department in City of Mt. Vernon v. New York Interurban Water Company, 115 App. Div. 658, 101 N. Y. Supp. 232. In that case the contract of the predecessor of the defendant with the city of Mt. Vernon provided for certain charges or rates to private consumers. The Appellate Division stated in its opinion that

such rates, though fixed by such agreement, were always subject to review by the courts and readjustment so as to be reasonable; and that the right to have such review in a proper case was reciprocal, both in the corporation and in the consumer alike. The opinion upon this point said:

"The statute requirement that the rate and cost shall be reasonable is to afford protection to the corporation and to the consumer alike, that there may be neither confiscation nor extortion, and if the rate named be not reasonable so as to afford a fair profit to the corporation and a fair price to the consumer, the courts will ascertain it." 115 App. Div. 661, 101 N. Y. Supp. 234.

This statement, however, perhaps may not be regarded as having the force of an exact decision, as that court held that in that action, brought by the city itself, "a judicial scrutiny of the rates as unreasonable to the private consumers" could not be had; in other words, that the determination of that question could be had only in an action between the water company and such consumer.

From the extract above quoted from the opinion of the Appellate Division in that case, it would certainly at first seem that the defendant's allegations in the fifth defense herein are sufficient to call upon the court to give "judicial scrutiny" to the rates established by the agreement of October, 1894, and to warrant the court in determining whether or not those rates are now reasonable as between the private consumers and the defendant; and I should so hold, except for the fact that it seems clear to me that the Court of Appeals in the case of Pond v. New Rochelle Water Company (this same defendant) 183 N. Y. 330, 76 N. E. 211, 1 L. R. A. (N. S.) 958, expressly decided that, as to another private consumer in the village of Pelham Manor, this defendant was absolutely bound by those rates, notwithstanding that its third defense in its answer in that case alleged, in substance, the same matter as to the then present unreasonableness of such rates, which is alleged in the fifth defense herein. Therefore I feel compelled to sustain the demurrer to this fifth defense. The Court of Appeals in its opinion in that case said:

"It is clear that the defendant company rests under a contract obligation extending to October 22, 1924, to furnish the consumers of water in the village of Pelham Manor at a fixed rate per annum." 183 N. Y. 333, 76 N. E. 212 (1 L. R. A. [N. S.] 958).

The demurrer to the fifth defense is therefore sustained.

Fourth, the issues of fact: There is really very little conflict in the evidence as to any material fact. In October, 1894, the defendant's predecessor, the New York City District Water Supply Company, entered into a franchise agreement with the village of Pelham Manor, in which it agreed, among other things, to supply private consumers with water in said village, during the existence of such contract, or any extension, "at the rate of not exceeding the rates then charged in said village of Pelham Manor by the New York & Westchester Water Company." The term of said contract was 10 years, with the privilege to the village of extending it for a further period of 30 years. Such privilege was duly exercised by the village at or shortly before the expiration of the original contract period of 10 years. At the time of the making of such contract, the New York & Westchester Water

Company was supplying a considerable number of private consumers within the village with water at the rate of $22.50 per house and $5 per stable for each year; such supply being unlimited by meters or any device other than the size of the connecting pipes. About February, 1904, the defendant herein, through various proceedings and conveyances, acquired the rights and privileges of the said New York City District Water Supply Company and succeeded to its obligations under said contract; and the extension thereof, by act of the village, was taken later during that year. The same year, 1904, the plaintiff erected within the limits of said village a large house and stable, and the same were connected with the defendant's main, the house by a pipe $2\frac{1}{2}$ inches in inside diameter, and the stable by a pipe $1\frac{1}{4}$ inches inside diameter. The defendant, having discovered the size of the pipes, and claiming that the plaintiff was entitled only to one $\frac{3}{4}$-inch connection for both house and stable, unless he submitted to the use of a meter and the payment of meter rates, notified him of such requirement upon its part, and thereafter the plaintiff brought this action.

The plaintiff's establishment is a very extensive one, far beyond the usual suburban dwelling. It consists of a mansion about 180 feet front by 75 feet in depth, upon a graded lawn some 4 acres in extent, upon which the water is also used, and a stable about 50 by 60 feet. The house is now supplied with water through a connecting pipe $2\frac{1}{2}$ inches in diameter, inside measurement, and the stable by a separate connection by a pipe $1\frac{1}{4}$ inches in diameter, inside measurement. There is also upon the plaintiff's premises a third pipe connecting with the defendant's main, which, however, appears to have been in the premises before the plaintiff purchased them and not to have been used since the completion of the plaintiff's house. The claim of the plaintiff is that he is entitled to maintain both connections and at will to take through the same any supply of water which he may please to take, even to the utmost capacity of such connections. It is manifest that the equipment of his house and stable, with the use of the water upon his exterior premises, will require a large amount of water; but the evidence does not indicate even approximately such amount. As hereinbefore stated, the court holds that the defendant is now bound as to private consumers in the village of Pelham Manor, and therefore as to the plaintiff, by the terms of the original franchise contract of October, 1894, and is compelled to furnish water to the plaintiff at the rate then, to wit, October, 1894, charged to private consumers in said village by the New York & Westchester Water Company. The sole question to be determined therefore is: What is the meaning of that original contract? Does it permit a private consumer to have a pipe connection of any size he may wish with the defendant's main?

Every contract must be read in the light of the situation of the contracting parties at the time when the contract was made, and, in view thereof, given a reasonable construction. When such franchise agreement between the village and the defendant's predecessor, the New York City District Water Supply Company, was made in October-

1894, the great·majority of the houses in Pelham Manor were ordinary suburban cottages and were supplied with water through·a connection with the main of ⅝ or ¾ of an inch inside diameter, and in some cases the house and stable were supplied each by a separate such con-́ nection. It may be that there were, by special favor or permission, a very few larger such connections. I think that it is reasonable to conclude that the contracting parties then understand and intended that the connections to supply private consumers would be substantially as they then were, at least as to size and consequent capacity to carry and deliver water; and that, while such contracting parties contemplated that the supply should be unlimited by meters, they did intend it should be limited by the usual size of connections then prevailing. It seems to me·that any other construction would be quite unnatural and unreasonable. If such construction be not given to the contract, then the amount of water which any private consumer may take· is absolutely unlimited. The plaintiff might as well have a 6-inch connection as one of 2½ inches, and a .very few such private consumers might exhaust the capacity of the defendant's mains.

Even as it is, the plaintiff's 2½-inch pipe connection with his house is capable of furnishing, at the pressure maintained by the defendant, 20 times the amount of water that can be supplied through a ¾-inch connection; and his stable connection of 1¼ inches is capable of supplying 3½ times the amount of water which can be supplied through a ¾-inch pipe. ' It is my conclusion therefore that the plaintiff is not entitled, under the original franchise contract, to have and use a connection with his house to exceed one of ¾ of an inch inside diameter, or a connection with his stable to exceed the same·size.

As to the interview between the plaintiff and defendant's representative, Madigan, I think that there was an honest misunderstanding between them, and that the rights of the parties here are not affected thereby. Moreover, I am satisfied that in entering into the stipulation of September, 1904, with reference to the Pond action, defendant did· not understand the nature of the connections with the plaintiff's premises; or that there was an honest misunderstanding, as above stated, as to the terms upon which those connections were permitted. Hence it does not seem that such stipulation should be held effective upon the defendant further than to hold it bound, during the pendency of such action, not to dispute that the plaintiff is entitled to the benefit of the provisions of the original franchise contract of October, 1894, as to terms to private consumers. As I have decided upon the merits that the defendant is so bound, that stipulation is immaterial here; the plaintiff being accorded the full benefit of such provisions as the court construes them.

A decision may be drawn and submitted in accordance with the above conclusions. No costs will be allowed to 'either party, because each claimed· more from 'the other than such party is found entitled to have.