CHARLES H. POND, Respondent, *v.* NEW ROCHELLE WATER COMPANY, Appellant.

CONTRACT — EQUITY — WHEN CONTRACT OF WATER COMPANY WITH INCORPORATED VILLAGE TO FURNISH WATER AT CERTAIN RATES MAY BE ENFORCED BY RESIDENT OF THE VILLAGE. Where a water company, in consideration of the right to lay and maintain its water mains and pipes through the streets of an incorporated village for a period of years, entered into a contract with the village whereby it agreed to supply private consumers and corporations in the village with pure and wholesome water at a rate per annum not exceeding a designated amount, the contract is a valid and binding obligation upon the water company and its successors for the benefit of the inhabitants of the village; and where the successor of such water company has sent to a resident of the village a printed notice to the effect that no water would be supplied by the company, after a certain date, except through meters and at rates largely in excess of those fixed by the contract, such resident may maintain an action for a permanent injunction restraining the company from enforcing collection of a water rate in excess of that fixed by the contract.

*Pond* v. *New Rochelle Water Co.*, 107 App. Div. 624, affirmed.

(Argued November 20, 1905; decided January 9, 1906.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered September 20, 1905, which affirmed an interlocutory judgment of Special Term sustaining a demurrer to the affirmative defenses set up in the answer and holding that the complaint stated a cause of action, and from an interlocutory judgment entered thereon.

The nature of the action, the facts, so far as material, and the questions certified are stated in the opinion.

*Henry W. Smith* and *Herbert D. Lent* for appellant. The mere fact that a party is an inhabitant of a village in this state and a private consumer of water therein, gives him no right to maintain an action on a contract made between the village and a water company fixing the price the inhabitants shall pay the water company for water supplied by it to them for private consumption, or a price which shall not be exceeded. (*Wainwright* v. *Q. C. Water Co.*, 78 Hun, 146; *Buchanan* v. *Tilden*, 158 N. Y. 118; *Durnherr* v. *Rau*, 135 N. Y. 219;

*Jackson* v. *Carey*, 8 Johns. 285 ; *Hornbeck* v. *Westbrook*, 9 Johns. 73.)

*Henry G. K. Heath* for respondent. Plaintiff can maintain this action in his own name. (*People ex rel. W. S. S. R. Co.* v. *Barnard*, 110 N. Y. 548 ; *Gaedeke* v. *S. I. M. R. R. Co.*, 43 App. Div. 514 ; *Coster* v. *Mayor, etc.*, 43 N. Y. 399 ; *Vrooman* v. *Turner*, 69 N. Y. 280.)

Bartlett, J. The Appellate Division in allowing this appeal certified two questions, as follows : (1) Does the complaint in this action state a cause of action ; and (2) is the affirmative matter set up in the answer sufficient in law upon the face thereof to constitute a defense in this action ? Neither the Special Term nor the Appellate Division handed down an opinion, and we are remitted to the record, as is frequently the case in appeals from all the departments, without the views of the Supreme Court.

The plaintiff, a resident of the village of Pelham Manor, Westchester county, and a customer of the defendant water company furnishing the village with its supply of water, seeks in this action a permanent injunction restraining the company from enforcing collection of a water rate in excess of the amount fixed by the existing contract with the village.

In October, 1892, the New York & Westchester Water Company supplied private consumers under a written contract, wherein it agreed with present and prospective private consumers to supply water to them at a rate per annum not to exceed $22.50 for each private house and $5.00 for each private barn ; this contract extended to November first, 1897.

On or about October 22nd, 1894, a franchise was granted to the New York City District Water Supply Company by the village, authorizing the company to lay its mains for the purpose of supplying water ; that at the same time a contract under seal was entered into between the village and the company, which contained, among other provisions, a covenant that for and during the term of ten years, from October 22nd, 1894, and an extension for twenty years thereafter, if voted by the

village pursuant to law, it would supply private consumers and corporations in the village with pure and wholesome water at not exceeding the rates then charged by the New York & Westchester Water Company. It further appears that on May 31st, 1904, the village voted to extend this contract for thirty years from its original date, October 22nd, 1894, to October 22nd, 1924, as permitted by the Transportation Corporations Law, section 81 (Birdseye's Stat. vol. 3 [3rd ed.], p. 3763), and the contract with the New York City District Water Supply Company was thereby extended for the same period.

Some time prior to February 11th, 1904, the defendant New Rochelle Water Company became the assignee and successor of the rights of the New York City District Water Supply Company, and subject to all its obligations. On February 11th, 1904, the defendant notified this plaintiff in writing that it would furnish water to him after April first next only upon written application for water to be taken through a meter. This notice was subsequently withdrawn, but later, on or about April 11th, 1904, the defendant again sent to this plaintiff a printed notice to the effect that no water would be supplied by the company except through meters on and after October 22nd, 1904, and at rates largely in excess of those fixed by the contract, to which reference has already been made. On August 1st, 1904, the defendant again sent to the plaintiff a printed notice repeating substantially the last above notice. The foregoing statement of facts contains the substance of the complaint.

The defendant served an answer which was practically a general denial, and pleaded three affirmative defenses. The first defense was, in substance, that compliance with the alleged contract, as claimed by the plaintiff, would amount to a confiscation of the defendant's property and the rights of certain municipalities it was supplying with water, and would work a forfeiture of its franchise, the fixed rate being too low. The second defense alleged that the contract which the plaintiff seeks to enforce is *ultra vires.* The third defense

alleged that the defendant is ready and willing to furnish the inhabitants of the village of Pelham Manor with pure and wholesome water at reasonable rates and cost; should the defendant attempt to enforce the alleged contract against the small consumers it would lead to a multiplicity of suits which it could not successfully defend, and that it·would be ruinous for the defendant to furnish the large consumers an unlimited supply of water at the rates fixed by the alleged contract, and would amount to a confiscation of its property; that if the alleged contract is valid and enforceable, it amounts to an exclusive franchise, which the village had no power to grant; that if the contract was valid, it gave the plaintiff no cause of action.

The plaintiff interposed separate demurrers to each of these affirmative defenses on the ground that each was insufficient in law upon the face thereof. The Appellate Division affirmed the interlocutory judgment sustaining the plaintiff's demurrers to the affirmative matter set up in the answer, and sustaining the complaint as stating a cause of action.

We agree with the decision of the learned Appellate Division as above stated, and deem it necessary to discuss only one question of law presented by the pleadings. It is clear that the defendant company rests under a contract obligation extending to October 22nd, 1924, to furnish the consumers of water in the village of Pelham Manor at a fixed rate per annum.

The defendant not only attacks the validity of this contract, but insists that even if it is an existing and binding obligation it cannot be enforced at the suit of an individual private consumer. The plaintiff argues that, " Where a contract for a valuable consideration contains covenants intended to benefit a certain class not parties to the agreement, but within the contemplation of the parties at the time, who are expressed as a class and the promisee has some duty or liability to such class, and interest that the covenant be performed, any person coming within such class may bring an action in his own name in equity to compel performance of the covenant against the

promisor." In support of this contention the familiar case of *Lawrence* v. *Fox* (20 N. Y. 268) and other authorities are cited.

In *Lawrence* v. *Fox* (*supra*) there was a money indebtedness due on a day certain from Holly to Lawrence and in consideration of the loan from Holly to Fox the latter agreed to pay his debt to Lawrence. It is obvious that the case cited and other actions at law following it do not present the precise question raised in the case at bar, which is a suit in equity, although a kindred principle is involved. The question may be thus stated : The village of Pelham Manor in granting privileges to a water company extending over a long period of time, made the same subject to a written contract under seal, having for its object the protection of the present and future private consumers of water. The defendant company, which has been subrogated to all rights and liabilities of the original contracting company, threatened to violate that contract by a printed notice served on a private consumer, the plaintiff, that after a certain day it would no longer abide by the contract rates, but charge a larger amount. The question is, can the plaintiff, under these circumstances, ask a court of equity to permanently enjoin the defendant from violating the contract and compel it to perform the same. That this action can be maintained is no longer an open question in this state.

This court held in *Coster* v. *Mayor* (43 N. Y. 399) that if one person contract, whether with or without seal, with another for the benefit of a third person, such third person may maintain an action on the agreement. At page 411, FOLGER, J., says : " It is settled in this state, that an agreement made on a valid consideration by one with another, to pay money to a third, can be enforced by a third in his own name. (*Lawrence* v. *Fox*, 20 N. Y. 268 ; *Secor* v. *Lord*, 3 Keyes, 525.) And though a distinction has sometimes been made in favor of a simple contract (*Hall* v. *Marston*, 17 Mass. 575 ; *D. & H. Canal Co.* v. *W. Co. Bank*, 4 Denio, 97), it is now held that when the agreement is in writing and under seal the same rule prevails. (*Van Schaick* v. *Third Ave. R. R. Co.*, 38 N. Y. 346 ; *Ricard* v. *Sanderson*, 41

N. Y. 179.) Nor need the third person be privy to the consideration. (*Secor* v. *Lord, supra.*) Nor need he be named especially as the person to whom the money is to be paid. In that class of cases, which holds that a grantee of mortgaged premises who takes them subject to the lien of the mortgage, which, by words in the deed of conveyance to him, he assumes to pay, is personally liable to the holder of the mortgage for the amount of the mortgage debt, no question seems to be made but that the action may be maintained in the holder's name, though the agreement be not made immediately for the benefit of the plaintiff, nor he be named in the deed. Thus, in *Burr* v. *Beers* (24 N. Y. 178), the clause in the deed described the mortgages as held by John Cramer, which mortgages the grantee thereby *assumed to pay*. And the case last cited was, not an action in equity for the foreclosure of the mortgage in which the mortgagor and his grantee were both parties. (See page 179.) It was an action to recover a personal judgment against the grantee. The question was distinctly raised that there was no privity of contract between the plaintiff and defendant. And the decision against the defendant was put in the language of DENIO, J., 'upon the broad principle that if one person makes a promise to another *for the benefit of a third person*, the third person may maintain an action on the promise.'"

Judge DENIO further said, continuing the above quotation (p. 180): "Upon that question there has been a good deal of conflict of judicial opinion. As long ago as 1817, Chancellor KENT laid it down as a point decided, and referred to not less than eight English and American cases as sustaining the principle (*Cumberland* v. *Codrington*, 3 Johns. Ch. Repts. 255), and since then it has been frequently affirmed by judges, after an attentive examination of cases, as in *Barker* v. *Bucklin* (2 Denio, 45), and in the cases therein referred to."

The case of *Vrooman* v. *Turner* (69 N. Y. 280) illustrates the general principle here involved. This was an action to foreclose a mortgage and to hold liable a grantee who had received a conveyance subject to the mortgage, and which she

assumed and agreed to pay. The mortgage was executed in August, 1873, by one Evans, who then owned the mortgaged premises. He conveyed the same to one Mitchell, and through various *mesne* conveyances the title came to one Sanborn. In none of these conveyances did the grantee assume to pay the mortgage. Sanborn conveyed the premises to defendant, Harriet B. Turner, by deed, which contained a clause stating that the conveyance was subject to the mortgage, "which mortgage the party hereto of the second part hereby covenants and agrees to pay off and discharge, the same forming part of the consideration thereof." The referee found that Mrs. Turner, by so assuming payment of the mortgage, became personally liable therefor, and directed judgment against her for any deficiency. The General Term affirmed this judgment. This court in reversing the judgment held that, as Mrs. Turner's grantor was not personally liable to pay the mortgage, her covenant was made with a stranger and could not be enforced. This court said (p. 283): "To give a third party who may derive a benefit from the performance of the promise an action, there must be, *first*, an intent by the promisee to secure some benefit to the third party, and, *second*, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally. It is true there need be no privity between the promisor and the party claiming the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee to him will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise, the obligation of the promisee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promisor. A mere stranger cannot intervene and claim by action the benefit of a contract between other parties. There

must be either a new consideration or some prior right or claim against one of the contracting parties by which he has a legal interest in the performance of the agreement."

The judgment was reversed in this case because defendant's grantor was not liable to pay the mortgage. If in all the *mesne* conveyances the grantees had assumed and agreed to pay the mortgage executed by Evans, the mortgagee or his assignee could have enforced the covenant made by the defendant, Mrs. Turner, as it would have been a promise to pay the debt due him made to one also liable to discharge it.

The general principle, that if one person contracts for the benefit of a third person, such third person may maintain an action on the agreement, has been applied since early in the seventeenth century in a large number of cases, the facts in each differing to some extent.

The leading case in England is *Dutton* v. *Pool* (1 Ventris, 318, 332), decided in the reign of Charles II. The plaintiff declared in assumpsit that his wife's father being seized of certain lands now descended to the defendant and being about to cut a thousand pounds' worth of timber to raise a portion for his daughter, the defendant promised to the father in consideration that he would forbear to fell the timber, that he would pay the daughter one thousand pounds. After verdict for the plaintiff on non-assumpsit, it was moved in arrest of judgment that the father ought to have brought the action and not the husband and wife. The court said : " It might have been another case if the money had been to have been paid to a stranger ; but there is such a nearness of relation between the father and the child, 'tis a kind of debt to the child to be provided for, that the plaintiff is plainly concerned." The judgment was affirmed in the Exchequer (2 Lev. 212; Raym. 302). Some criticism having been expressed as to the soundness of this decision, Lord MANSFIELD said of it a hundred years later, that it would be difficult to conceive how a doubt could have been entertained about the case. (*Martyn* v. *Hind*, Cowp. 443 ; Doug. 142.) The case has been repeatedly followed in this state.

22.

The principle established by this case has been applied to contracts entered into by a father for the benefit of his daughter and by a husband for the benefit of his wife. As to the latter instance, see *Buchanan* v. *Tilden* (158 N. Y. 109). In the case before us we have a municipality entering into a contract for the benefit of its inhabitants, the object being to supply them with pure and wholesome water at reasonable rates. While there is not presented a domestic relation like that of father and child or husband and wife, yet it cannot be said that this contract was made for the benefit of a stranger. In the case before us the municipality sought to protect its inhabitants, who were at the time of the execution of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time.

We are of opinion that the complaint states a good cause of action.

The order and interlocutory judgment appealed from should be affirmed, with costs, and the first question answered in the affirmative and the second in the negative.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Order and judgment affirmed.