### WALTON *v.* PROUTT, RECEIVER.

### Opinion delivered March 15, 1915.

WATER COMPANIES—COMPLIANCE WITH CONTRACT—RIGHT OF INDIVIDUAL CITIZEN.—A citizen and user of water in a city has the right to maintain an action to compel a water company to comply with its contract with the city.

Appeal from Mississippi Chancery Court, Chickasawba District; *Charles D. Frierson,* Chancellor; reversed.

*Appellant, pro se.*

1. The franchise or charter granted to the water company constitutes a contract between the company and the city for the benefit of the inhabitants thereof. 76 U. S., 9 Wall. 50; 70 L. R. A. 770; 27 L. R. A. 514.

A consumer may maintain suit to compel a water company to furnish water at the rate stipulated in the contract between the company and the municipality. 1 L. R. A. (N. S.) 958; *Id.* 963.

2. A franchise granted by a city and accepted must be strictly construed against the grantee, and where there are doubts as to the meaning of the contract, such doubts

must be resolved against the grantee and in favor of the city. 10 L. R. A. 770; 27 *Id.* 514; 48 *Id.* 41.

3. The court's construction of the contract was erroneous. In order to construe the contract as authorizing charges upon the accumulative or sliding scale, it is necessary to eliminate entirely from the franchise that clause reading "the minimum under one rate shall not be less than the maximum under the preceding rate," which, since a contract is to be construed as an entirety, and every part given due weight and meaning, would not be permissible. 9 Cyc. 580, 583.

The true object in construing a contract, is to arrive at the intention of the parties. 94 Ark. 419; *Id.* 471.

*J. S. Allen,* for appellee.

1. Walton had no right to intervene in this proceeding. The statutory remedy given to consumers is full and adequate, and would cover not only all matters of construction of the terms fixing the present rate, but also their reasonableness, etc. Kirby's Dig., § § 5445, 5446; 80 Ark. 128; 35 S. W. 734.

The statutory remedy is exclusive, and resort can not be had to the courts until the relief to which a consumer is entitled has been denied him under the remedy provided by statute. 55 Neb. 627, 45 L. R. A. 113; 23 L. R. A. 146; 54 Ia. 59; 79 Ia. 419; 83 Ga. 219; 48 Kan. 12; 15 L. R. A. 375; 53 Minn. 446; 37 Neb. 546; 21 L. R. A. 653.

2. The trial court's construction of the contract is correct.

The strict rule of construction contended for by appellant is controlling when the question of the right to make the grant or the terms or scope of the grant is involved; but it does not follow that all the provisions of a franchise will be strictly construed against the grantee. Abbott, Mun. Corp., 1389; 157 Ind. 169; 38 Mich. 154; 152 Ill. 184; 37 La. 589; 89 Md. 710; 175 Pa. St. 213; 57 *Id.* 301; 94 Ark. 461; 101 Ark. 22.

McCULLOCH, C. J. This case involves a construction of the language of a franchise granted by the city of

Blytheville to a private corporation, authorizing said corporation to furnish water to the inhabitants of said city. The controversy relates to the rates authorized to be charged for the consumption of water. The first question presented, however, is whether or not appellant, a citizen of the city, has a right to maintain an action to compel those acting under the franchise to comply with the terms thereof. Creditors of the water company instituted an action in the chancery court of Mississippi County and a receiver was appointed by the court to take charge of the plant and operate it during the pendency of the litigation. The receiver filed a petition asking the court to construe the contract between the company and the city, with respect to the scale of charges to be made against the consumers of water, and to give instructions to the receiver on that score. Appellant, who was a citizen of the city, intervened and asked that the contract be construed and the receiver be ordered to carry out the contract according to the court's construction of it. The court refused to place upon the contract the interpretation contended for by appellant, and an appeal is prosecuted to this court.

We are of the opinion that appellant, as a citizen and user of water in the city, has a right to maintain an action to compel the water company to comply with its contract. There are authorities which clearly sustain that view, and we think they are correct. 1 Farnam on Waters, § 160-B; *Pond* v. *The New Rôchelle Water Co.*, 183 N. Y. 330, 1 L. R. A. (N. S.) 958; *Robbins* v. *Bangor R. & E. Co.*, 100 Me. 496, 1 L. R. A. (N. S.) 963. The New York Court of Appeals in the case cited above based its conclusion on the ground that the contract was made for the benefit of the citizens of the municipality, and that a citizen had a right to sue on the contract. The Maine court based its conclusion on the ground that mandamus was the proper remedy to compel the performance of the contract, and that an individual had the right to sue to compel the performance of the public duty. Both of those decisions distinguish the question of the right

of a citizen to sue for damages resulting from a breach of the contract. This court has followed the great weight of authority in holding that a citizen can not maintain a suit for damages resulting from a breach of a contract of this kind, putting it on the ground that the citizens of the municipality are not parties to the contract. *Collier v. Newport Water, Light & Power Co.*, 100 Ark. 47. The question now presented is different from that, and we hold that while there is no right of action for a breach of the contract a citizen of the municipality, notwithstanding the fact that he can not be treated as a party to the contract, has a right to sue to compel the performance of the public duty which rests upon the holder of the franchise. We are not concerned at this time about whether the proper remedy is in equity, or at law by mandamus. No suit could be maintained either at law or in equity against the corporation in the hands of the receiver without first obtaining the consent of the court, and a citizen had a right to come into the court of equity where the affairs of the corporation are being administered through an agency of the court.

The controversy arises over the interpretation of the following clause of the contract regulating rates:

"Any consumer whose annual rental under the flat rate for any single connection, equals $15.00 per annum, may elect to have his service metered.

### METER RATES.

| | |
|---|---|
| 2,500 gallons or less, per month, per M. gal | $0.30 |
| 2,500 to 5,000 gallons per month, per M. gal | .25 |
| 5,000 to 10,000 gallons per month, per M. gal | .20 |
| Above 10,000 gallons per month, per M. gal | .15 |

"The minimum amount of bill under one rate shall not be less than the maximum under the preceding rate.

"The minimum meter rate to be seventy-five cents per month.

"The water company may make special contracts with private concerns for the use of water for unusual, special, or peculiar purposes or for purposes not specified in the foregoing table of rates, but it will not be required

to furnish any service connection of less than $6.00 per annum.''

It is contended on behalf of the appellee that the proper interpretation of the contract means that what is called the ''accumulative'' or ''sliding'' scale means that a consumer must pay thirty cents per thousand gallons for the first 2,500 gallons used, and twenty-five cents per thousand for excess over 2,500 gallons up to 5,000 gallons, and so on up to the maximum amount provided for. On the other hand it is contended by appellant that the contract should be construed as adopting what is termed the ''flat'' scale, which constitutes a division of customers into classes according to the amount of water consumed, and provides a rate for each class. The court adopted appellee's contention, but we think that is an erroneous interpretation of the contract. Much plainer language could have been used if the framers of the franchise had intended what the court interprets the language to mean. It could easily have been stated that the rate of thirty cents per thousand should be charged for the first 2,500 gallons, and the lower rates for the excess, on up to the maximum; but, instead of that, the language has, we think, been employed which means quite another thing. If that was the correct view, no meaning whatever could be given to the clause which provides for a minimum amount under each classification of rates. In other words, if the framers of the city ordinance had intended it to mean that such a rate should be charged up to a certain amount, and another rate for the excess, it would have been useless to have prescribed a minimum rate on each separate classification. When the whole of this scale of rates is read together, we are convinced that it means what the appellant contends for, that is to say, the flat scale which divides the customers into classes according to the quantity of water used per month, and that the consumers are entitled to have water furnished according to the rates fixed for the class within which each falls.

The decree is therefore reversed and the cause remanded with directions to enter a decree in accordance with this opinion.