Matter of the Application of WILLIAM B. BAKER, GEORGE LAMBERT and MICHAEL F. MURPHY, Constituting the Board of Fire Commissioners of the Fire Department of the Town of Pelham, First Fire District, Petitioners, against NEW YORK INTERURBAN WATER COMPANY, Respondent, for a Peremptory Writ of Mandamus.

Matter of the Application of HARRY S. HOUPT, for a Peremptory Writ of Mandamus.

Matter of the Application of FRED C. SHELDON, for a Peremptory Writ of Mandamus.

(Supreme Court, Westchester County, November, 1920.)

Mandamus — when peremptory writ of, granted — contracts — realty companies — water companies — municipal corporations — Highway Law, § 171.

Where the right of a realty company to enforce certain conditions of a contract between it and a water company carries

with it the necessary and incidental right to enforce a further condition requiring the water company upon "the opening and grading" by the realty company of any street in a certain property affected by the contract to "lay mains in said new streets or avenues when ordered so to do" by the realty company where it has given the requisite notice in writing, and it is stipulated that all the streets and avenues controlled by the realty company have been dedicated to public use under section 171 of the Highway Law, the purchaser of a lot on a street in which there are no water mains is entitled to a supply of water in accordance with said contract and will be granted a peremptory writ of mandamus directing the laying of water mains by the water company.

The refusal of the individual relator to pay a rate in excess of that fixed by the contract between the two companies was justified.

The right of the water company to enforce its claim against the individual relator for an unpaid bill, by a refusal of further service, cannot be applied to the application of municipal authorities, alleged to be in default in the payment of bills, to compel the installation of fire hydrants.

APPLICATIONS for peremptory writs of mandamus.

Benjamin L. Fairchild, for relators.

Arthur M. Johnson, for respondent, New York Interurban Water Company.

YOUNG, J.   Applications are made in these proceedings by two private consumers and the board of fire commissioners of the first fire district of the town of Pelham for peremptory writs of mandamus, directing respondent to lay mains and install hydrants in certain streets in what is known as Pelham Heights.

Respondent furnishes water for public and private use in the portion of the village of Pelham known as Pelham Heights under an agreement with the Pelham Heights Company, the owner of the streets in that section, dated March 31, 1906. By the agreement the Pelham Heights Company sold to the respondent all

the water mains then laid in the streets and avenues in that property. The agreement recites the application by the respondent to the Pelham Heights Company and the grant by the latter to respondent of the privilege and right to open streets and avenues then and thereafter laid out in that property, and to lay and maintain therein mains, pipes and service for the distribution of water for public and private use subject to certain conditions, among others, the following:

" *Third.* That the maximum charge for water, to each private consumer, shall not exceed the present prevailing flat rate or at the option of the party of the second part, meter rates, which shall not exceed those now established by the party of the second part in the City of Mount Vernon, and for public use shall not exceed Thirty dollars ($30.00) per annum per hydrant, and the charge to private consumers, and for public use, shall not at any time exceed the regular charge by said party of the second part, or its successors, to private consumers, and for hydrants, in either Mount Vernon, or New Rochelle, or in any portion of the Town of Pelham.

" *Fifth.* That on and after the first day of April, 1906, the said party of the second part shall supply water for public and private consumption through all of said mains and through all of the mains hereafter laid as provided herein, in quality and quantity equal to that now furnished by the said party of the second part in the City of Mount Vernon and of sufficient quantity and force to give an ample supply for private and public consumption in any and every portion of any house now or hereafter erected within said Pelham Heights.

" *Sixth.* That upon the opening and grading by the party of the first part of any streets or avenues within the said Pelham Heights property, as shown on said

map, belonging to the party of the first part, the said party of the second part shall lay mains in said new streets or avenues, when ordered so to do by the party of the first part, and of sufficient dimensions to supply a sufficient quantity of water as in the preceding paragraph, number five, is required to be furnished, and the party of the first part agrees to complete such streets, including the macadamizing, promptly upon the completion of the laying of said mains. Said party of the first part may give notice in writing to said party of the second part to lay new mains and said party of the second part shall thereupon, without unreasonable delay, proceed to lay the mains so ordered, upon such newly opened street or avenue. * * *

" *Seventh.* That the party of the second part shall furnish hydrants at any points along the line of said mains now laid in said property, or hereafter laid therein under the terms of this agreement whenever said hydrants are ordered by either the Village of Pelham or its successors, or by the officers of fire districts, or any fire district hereafter created in which shall be included the said Pelham Heights property, and shall not charge the Village of Pelham or its successors, or such fire district an amount for hydrants in excess of the amount provided in the preceding paragraph, number five."

By paragraph III the rights granted to the water company were made exclusive until dedication to or acquisition by the village of Pelham of said streets and avenues, and thereupon the rights granted were not to prevent the proper authorities from granting similar rights to other water companies. The parties have stipulated that the streets and avenues controlled by the Pelham Heights Company have now been dedicated to the village of Pelham for parkways under section 171 of the Village Law.

Ancon, Eastland, Corlies, Nyac and Franklin avenues are streets which have been laid out by the Pelham Heights Company and in which there are no water mains.    A memorial high school has been erected on a plot fronting Franklin, Corlies and Colonial avenues, and there are seven dwellings erected and another in course of erection on Eastland and Ancon avenues.    These eight dwellings are now owned by the relator Houpt, and one of them he has contracted to sell to the relator Sheldon.

On May 2, 1919, the Pelham Heights Company by a notice in writing directed respondent to install water mains in certain portions of the above streets and fire hydrants have been ordered installed by the fire commissioners at various points on these streets, under a resolution adopted by them on October 12, 1920, and served upon the respondent.

It is claimed by the relators that these mains and hydrants are essential to supply water for private use and for public fire protection.    The water company, however, refuses to make such installation and respondent's counsel now contends in substance:

(1) That the agreement with the Pelham Heights Company is not a franchise agreement with the local municipal authorities and that none of the applicants are or have become parties to the agreement, and that it is not enforcible for their benefit.

(2) That the streets in question are not public highways and that respondent cannot be compelled to construct mains therein.

(3) That the cost is unreasonable and not justified by the income to be derived, and

(4) That the relator Houpt and the fire commissioners owe overdue bills for water furnished.

Of course, it is elementary that to justify the issuance of the writs the relators must show upon the un-

disputed material facts a clear legal right, for which there is no adequate remedy. I think it reasonably clear that neither a suit in equity for specific performance nor an action at law to recover the penalty provided in the agreement, as suggested by respondent's counsel, furnishes, in the existing circumstances, an adequate remedy.

The agreement with the Pelham Heights Company, the opening of the streets in question, the lack of a water supply therein, the erection of the buildings, and the notices to lay the mains and install the hydrants are undisputed facts. Whether the cost of this installation is reasonable or otherwise is not, in my opinion, properly an issue in this proceeding. *People ex rel. Pelham Manor* v. *New Rochelle Water Co.,* 58 Misc. Rep. 287, 294.

The respondent was bound by its contract. *Condon* v. *New Rochelle Water Co.,* 116 N. Y. Supp. 142, 144.

Unless the requirement was capricious, arbitrary, unreasonable or tyrannical, respondent, under the agreement (if otherwise valid and enforcible), must comply. *New York* v. *Jamaica Water Supply Co.,* 181 App. Div. 49; affd., 226 N. Y. 572.

And to be unreasonable in this sense it must be entirely without justification. The high cost of this installation and the income to be derived solely from this particular portion of its service, irrespective of other portions, does not, in my opinion, establish such unreasonableness.

Respondent's counsel urges that this is not a franchise agreement under the Transportation Corporations Law. Undoubtedly, in the strict sense of that term, it is not. But I do not see how that can affect the question here involved. It is an agreement which is the foundation of respondent's right to sell water

in Pelham Heights, and respondent may not enjoy its privileges and benefits and repudiate its obligations and conditions, simply because it is not a so-called franchise agreement between itself and the municipal authorities of Pelham, nor because the streets which it so occupies are not public highways. I cannot find that it has ever been held that an agreement between a public utility corporation and a private corporation owning lands under development by which rights and privileges in the streets are granted and enjoyed and service promised is *ultra vires* or invalid for any reason. On the contrary, it has been held that although a franchise was granted to a natural gas corporation by local officers without authority to make the grant, the corporation having made the application, accepted the grant and occupied the highways thereunder, was estopped to question its validity or repudiate its conditions. *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40.

But the more serious question here involved is whether relators are entitled to enforce the agreement, or whether the Pelham Heights Company alone may do so.

It is now well settled that a private consumer may enforce a contract obligation by a water company with a municipality to furnish consumers at a fixed rate, as having been made for his benefit and protection. *Pond* v. *New Rochelle Water Co.*, 183 N. Y. 330; *Matter of International Railway Co.* v. *Rann*, 224 id. 83, 88; *Farnsworth* v. *Boro Oil & Gas Co., supra; People ex rel. Brush* v. *N. Y. Suburban Water Co.*, 38 App. Div. 413.

On the other hand, it has been held that there is no privity of contract between an individual taxpayer in a fire district and a contracting water company, and no official duty assumed by that company, which is

responsible to the district alone, and that persons who claim to have been injured because the agreed supply of water was not furnished, have no cause of action against the company. *Wainwright* v. *Queens County Water Co.,* 78 Hun, 146.

In that case it appeared that plaintiff's buildings were destroyed by fire by reason of defendant's failure to maintain the agreed water supply and pressure. This case was approved in *Smith* v. *Great South Bay Water Co.,* 82 App. Div. 427; and in *McEntee* v. *Kingston Water Co.,* 165 N. Y. 27, it was distinguished upon the ground that in that case the water company had a direct contract with plaintiff to supply him with water, and that although the complaint alleged a contract between defendant's predecessor and city of Kingston to furnish water, the contract was not proved, and the court said that it had nothing to do with the case.

I do not think the cases last cited are controlling in the case at bar. The *Wainwright* and *Smith* cases did not involve, except remotely, a consumer's right to a water supply under a municipal franchise, and in the *McEntee* case the court expressly held that such franchise was not involved. In any event, all these cases were decided before *Pond* v. *New Rochelle Water Co., supra,* and that case clearly establishes the principle that the consumer may enforce his right to be furnished water at a fixed rate.

Does the relief to which the relators here claim to be entitled fall within the principle of the *Pond* and analogous cases? Undoubtedly the third and fifth conditions under paragraph II of the agreement requiring respondent to furnish water through mains laid or which might be laid at a certain rate, are so governed, as well as the seventh condition requiring the respondent to furnish hydrants " along the line of

said mains '' then laid or thereafter laid whenever ordered by the village or the officers of a fire district. But, may we go a step further, and say that the right to enforce these conditions carries with it the necessary and incidental right to enforce the sixth condition requiring the respondent upon '' the opening and grading '' by the Pelham Heights Company of any street in the Pelham Heights property shown on its map to '' lay mains on said new streets or avenues when ordered so to do '' by the Pelham Heights Company, etc., where the requisite notice in writing has been given by that company? In other words, does the consumer's right to enforce by appropriate proceedings the contract for a water supply made for his benefit, include the right to compel the laying of mains and the installation of hydrants as provided in the contract in order that such supply may be obtained? Or is such right of enforcement exclusively in the Pelham Heights Company and its successors in interest? The question is novel and somewhat perplexing. I have found no case and none has been brought to my attention, where such an agreement between a private corporation and a water company has been construed, nor has a private consumer ever before, so far as I am aware, attempted by legal proceedings to compel a water corporation to lay mains pursuant to its franchise or agreement so to do.

In *Mt. Vernon* v. *New York Inter-Urban Water Co.,* 115 App. Div. 658, the right to prevent the collection of increased rates, or the discontinuance of the supply for failure to pay them was held to be confined to the individual consumer and that a municipality could not maintain such an action. And in *People ex rel. Pelham Manor* v. *New Rochelle Water Company, supra,* the proceedings for a writ of mandamus to compel the laying of mains and the installation of hydrants was instituted by the village.

Supreme Court, November, 1920.        [Vol. 113.

The question as to whether this right was exclusive in the village was not of course determined in the latter case, and it therefore does not aid us here.

In my opinion these proceedings are maintainable, and the relators are entitled to the relief sought. Relators are entitled to a supply of water in accordance with the contract made for their benefit. Unless mains are laid and hydrants installed, they cannot obtain such supply. The Pelham Heights Company has ordered these mains and hydrants, but respondent refuses to comply. I can see no distinction in principle between the consumer's right to be supplied with water from mains already laid and the right to have mains laid and hydrants installed for that purpose. In my opinion, both conditions of the contract under consideration are equally for their benefit within the doctrine laid down in the *Pond* case. To hold otherwise would leave consumers helpless, and without a remedy to enforce their clear legal right to a water supply, in the event that the Pelham Heights Company should neglect or refuse to act. If it be urged that the consumers might compel action on the part of that company, the answer is obvious, that they should not be limited to any such indirect action with its resulting delay and the possible reluctance of that company to move promptly in their behalf. What they might obtain thus indirectly, should be accorded them directly by proceedings in their own right and under their control.

The only remaining question is whether the alleged indebtedness of Houpt and the fire commissioners to respondent stands in the way of such enforcement. I think not. It is conceded that this indebtedness, at least of the relator Houpt, arises from his refusal to pay a rate in excess of that fixed by the agreement, and under the *Pond* case such refusal was justified.

As to the fire commissioners, I do not think that a refusal to supply water for fire hydrants because of such indebtedness, would be a reasonable regulation on the part of the water company. Such drastic action which might and probably would result in large fire losses, should not be sanctioned by law, where the water company may readily enforce collection of its claim by a proper action. The right of a public utility corporation to enforce its claims against consumers in this way has been, I think, confined to private consumers. It should not be applied to municipal authorities alleged to be in default.

The applications for peremptory **writs of mandamus** are granted.

Applications granted.