H. R. MOCH COMPANY, INC., Plaintiff, *v.* RENSSELAER WATER COMPANY, Defendant.

Supreme Court, Albany County, July 9, 1926.

Water companies — liability to taxpayer for failure to furnish fire protection pursuant to terms of contract with city — defendant water company agreed to supply city with water for its inhabitants for extinguishment of fires and to maintain adequate pressure and keep fire hydrants in repair — taxpayer may maintain action for damages arising from destruction of warehouse by fire by reason of defendant's failure to furnish adequate water — water company was not acting in governmental capacity — test of liability cannot be determined by question of whether or not city itself would be liable — right of action cannot be denied plaintiff on account of possibility of extensiveness of recovery.

A contract by which the defendant, a water company, for a specified rental per annum, agreed to supply the city of Rensselaer with water for its inhabitants for the extinguishment of fires and to keep its water system in good condition with adequate pressure and to maintain the fire hydrants in position at the execution of the contract and those subsequently installed, must be construed as having been made with the city of Rensselaer in the interests of its inhabitants and for their benefit; the expenditure of municipal funds for such purposes indicates some obligation as well as duty owing from the city to its inhabitants and its taxpayers which would give them a legal or equitable claim to the benefit of the contract in the nature of protection against fire.

Accordingly, plaintiff, a corporation having its principal office in the city of Rensselaer, may maintain an action against the defendant, a water company supplying water to the city of Rensselaer under the aforesaid contract, for damages arising from the loss of property by fire, where, notwithstanding immediate notification that a building adjacent to plaintiff's warehouse was burning, defendant neglected to supply a sufficient quantity of water with adequate pressure to extinguish the fire before it reached and destroyed the warehouse, although the pressure and supply with which the defendant was equipped and

35

had agreed by contract to supply and furnish was adequate and sufficient to prevent the spread of the fire to the warehouse and its contents.

The duty owed by the defendant to the plaintiff was one which it assumed through the corporate powers granted to it and by the franchise under which it acted and by its contract with the city.

While the municipality, if it had furnished or attempted to furnish water for fire purposes would, by reason of its governmental functions, have escaped liability, under these circumstances it cannot be said that the water company is immune from liability on the ground that it was acting in a governmental capacity.

The governmental functions of the city could not be delegated to a private corporation so that it would be immune from liability. Moreover, the test of liability of the defendant cannot be determined by the question of whether or not the city itself would be liable.

Plaintiff's right of action should not be denied on account of the possibility of extensiveness of recovery.

MOTION to dismiss the plaintiff's complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Burnham & Frank*, for the plaintiff.

*Thomas F. McDermott*, for the defendant.

ROSCH, J. The plaintiff is a corporation engaged in the trucking business. On the 13th day of December, 1922, it was the owner of a warehouse in the city of Rensselaer in which were machinery of the plaintiff and goods of others delivered to the plaintiff for transportation and storage. Its principal place of business is at Rensselaer. Rensselaer is a municipal corporation incorporated by a special act of the Legislature. The defendant is a domestic corporation.

On February 16, 1921, the defendant made a contract with the city of Rensselaer whereby it agreed to supply the city with water for its inhabitants, for use in its public buildings and schools, for street sprinkling, sewer flushing, and for the extinguishment of fires. This contract was made for certain considerations therein expressed. Among other provisions, defendant water company agreed to furnish service of 197 fire hydrants then in use at the rate of forty-two dollars and fifty cents per annum for each hydrant, and to erect additional hydrants in accordance with the provisions of the contract, which hydrants should be maintained at the same rate per hydrant. The contract's term was deemed to have commenced January 1, 1920, and expire December 31, 1921, and without further action by either of the parties was to be renewed and continued in force and effect for an additional term of one year. The water furnished was to be taken from the Hudson river at the place used by the company where its pumphouse was erected, and was to be maintained at all times at its then standard of efficiency. The company also agreed to supply water from its

reservoir in quantities sufficient for the purposes and needs of the city and its inhabitants. By the contract the company was to have the right to maintain and extend its water system and to excavate in streets for the purpose of making repairs, extensions or improvements. The company agreed to keep and maintain in proper working order the 197 fire hydrants then in position, and it was provided that the city through its fire department, at the time of inspection or test of fire department, or at the time of fires in the city, should have exclusive control of all the hydrants. At all other times the hydrants should remain under the exclusive control of the company with the right to the city to properly and carefully use same in obtaining water for the purposes contracted for. The contract was signed by the defendant water company by its president and the city by its mayor.

The plaintiff by its complaint alleges that on December 13, 1922, at a time the contract in question was in full force and effect, and when the defendant was obligated to execute and perform the terms thereof in the manner and extent prescribed, a building near the warehouse of plaintiff caught fire and flames from such building spread and extended to the warehouse of the plaintiff which, with its contents, was totally burned and destroyed; that the defendant was notified immediately of the fire in the building near the warehouse but omitted and neglected after such notice to supply a sufficient quantity of water with adequate pressure to stay, suppress or extinguish the fire before it reached the warehouse of the plaintiff, although the pressure and supply with which the defendant was equipped and had agreed by the contract to supply and furnish, was adequate and sufficient to prevent the spread of the fire to and the destruction of the warehouse of the plaintiff and its contents; that the fire department of the city of Rensselaer was in no way negligent and used every known means available to extinguish the fire, but was unable to accomplish that result owing to the fact that the defendant failed to furnish the supply of water with adequate available pressure necessary to accomplish that result, and that by reason of the defendant's failure and omission, the real and personal property of the plaintiff, together with the goods, wares and merchandise, were destroyed to its damage.

It is contended by the defendant that under the allegations of the complaint the plaintiff has no claim for damages against the defendant, either for breach of contract or on account of negligence. It is further contended in behalf of the defendant that if the city would not be liable on account of failure of a municipal water system, neither would the defendant, a private water company, to which the city delegated governmental duties. It is also

**548**  Moch Co., Inc., *v.* Rensselaer Water Co.

urged in behalf of the defendant that there is no privity of contract between it and an individual citizen, though a property owner or taxpayer who contributed to the fund disbursed by the city in payment of hydrant rentals for fire protection; and that not being a party to the contract, plaintiff cannot recover damages on account of injuries suffered through breach of covenants and obligations of the contract.

This case involves the determination of the much controverted question as to a water company's liability to a taxpayer for failure to furnish fire protection according to the terms of a contract with a city. (*German Alliance Ins. Co.* v. *Home Water Supply Co.*, 226 U. S. 220, 227.)

The decisions in most jurisdictions hold that an action of this kind is not maintainable. (Dillon Mun. Corp. [5th ed.] § 1340; Williston Cont. § 373; Page Cont. § 2401; 40 Cyc. 809; 38 A. L. R. 515.) The courts in some jurisdictions have held differently. (Williston Cont. § 372-a; Page Cont. § 2401; 38 A. L. R. 515; 40 Cyc. 810, notes.)

In this State we find two cases which sustain the defendant's contention. (*Wainwright* v. *Queens County Water Co.*, 78 Hun, 146; *Smith* v. *Great South Bay Water Co.*, 82 App. Div. 427.)

In the *Wainwright* case the court, speaking through Brown, P. J., says (p. 149):

" No individual taxpayer is named in the agreement, nor is it therein stated to be for their benefit, or that it was intended for their benefit. Nor did the defendant agree to extinguish fires, and it is clear, I think, that the allegation is a conclusion solely from the fact that its performance by the defendant would inure to the benefit of the plaintiffs and other taxpayers of the district.

" This is not sufficient to bring the case within the rule that when a promise is made by one person for the benefit of another, it may be enforced at the suit of the latter.

" It would serve no useful purpose to renew the discussion that has existed upon this rule since the decision of the case of *Lawrence* v. *Fox* (20 N. Y. 268). Many cases in which that principle has been applied seem to be in conflict with the rule that in an action upon a contract, privity of contract must exist between the parties. But where the third party was specifically named in the contract, or the promisor received money or property which he agreed to pay over to the third party, who, by adopting the contract, became a beneficiary thereunder, or where the promisee was under a legal obligation to the third person, which the promisor assumed as his own and thus connected himself with the transaction, privity of contract by adoption was spelled out.

"But it is now settled that, to bring a case within the rule, the contract must not only be beneficial to the third party, but it must have been intended for his benefit by the contracting parties. (*Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Garnsey* v. *Rogers*, 47 id. 233; *Vrooman* v. *Turner*, 69 id. 280.)

"In many cases where, as in the one before the court, the performance of the agreement would be beneficial to third persons, recoveries have been denied because the agreement was not specially intended for the benefit of those suing thereon. (*Turk* v. *Ridge*, 41 N. Y. 207; *Merrill* v. *Green*, 55 id. 270; *Simson* v. *Brown*, 68 id. 355.)"

In the *Smith* case, cited above, Judge Woodward in the opinion says (p. 428):

"We are asked to overrule *Wainwright* v. *Queens County Water Co.* (78 Hun, 146) and to reverse the judgment below by adapting to the facts of this case the principle of *Lawrence* v. *Fox* (20 N. Y. 268) and kindred cases, as applied in *Little* v. *Banks* (85 id. 258). In the *Wainwright* case (*supra*) *Little* v. *Banks* was fully considered, and the principle of that decision declared inapplicable to a state of facts similar in all material respects to that alleged in the complaint dismissed at the trial of this action. The later cases of *Fire Insurance Co.* v. *Village of Keeseville* (148 N. Y. 46), and *Buffalo Cement Co.* v. *McNaughton* (90 Hun, 74; affd., 156 N. Y. 702) have given additional weight to the *Wainwright* case as an authority; and in *McEntee* v. *Kingston Water Co.* (165 N. Y. 27) it is said by Judge Bartlett, referring to that case: 'It needs no argument to show that the plaintiff was a stranger to that contract.'

"An examination of these cases and a proper limitation of the doctrine of *Lawrence* v. *Fox* (*supra*) compel the conclusion that the contract between the defendant and the town of Islip was not made for the benefit of the plaintiff's assignor, within the meaning of the rule invoked by the plaintiff in this action. We think the complaint did not state facts sufficient to constitute a cause of action, and was properly dismissed."

The defendant also cites and places much reliance upon the decision of the Supreme Court of the United States in the case of *German Alliance Ins. Co.* v. *Home Water Supply Co.* (226 U. S. 220), wherein that court determines "the much controverted question as to a water company's liability to a taxpayer for failure to furnish fire protection, according to the terms of its contract with the city." The court held that the water company was not liable to a taxpayer for failure to furnish fire protection according to the terms of its contract with the city.

A portion of the opinion of Mr. Justice Lamar expresses the views of that court. To quote:

" In many jurisdictions a third person may now sue for the breach of a contract made for his benefit. The rule as to when this can be done varies in the different states. In some he must be the sole beneficiary. In others it must appear that one of the parties owed him a debt or duty, creating the privity, necessary to enable him to hold the promisor liable. Others make further conditions. But even where the right is most liberally granted it is recognized as an exception to the general principle, which proceeds on the legal and natural presumption, that a contract is only intended for the benefit of those who made it. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit. For, as said by this court, speaking of the right of bondholders to sue a third party who had made an agreement with the obligor to discharge the bonds, they ' may have had an indirect interest in the performance of the undertakings, but that is a very different thing from the privity necessary to enable them to enforce the contract by suits in their own names.' *Nat. Bk.* v. *Grand Lodge*, 98 U. S. 123, 124; *Hendrick* v. *Lindsay*, 93 U. S. 143, 149; *Savings Bk.* v. *Ward*, 100 U. S. 195, 202, 205.

" Here the city was under no obligation to furnish the manufacturing company with fire protection, and this agreement was not made to pay a debt or discharge a duty to the Spartan Mills, but, like other municipal contracts, was made by Spartanburg in its corporate capacity, for its corporate advantage, and for the benefit of the inhabitants collectively. The interest which each taxpayer had therein was indirect — that incidental benefit only which every citizen has in the performance of every other contract made by and with the government under which he lives, but for the breach of which he has no private right of action."

The question presented is whether under the law of this State an action may be maintained by the plaintiff on account of the breach of a contract made between the defendant and the city. It is urged in behalf of the plaintiff that under the law of this State it can maintain such action. From a study of the recent decisions, it appears that the courts of this State have taken a more advanced position than that of most jurisdictions in relation to the maintenance of an action by a third party for damages on account of breach of contract made for his benefit.

In the case of *Seaver* v. *Ransom* (224 N. Y. 233) we find the following language:

" Contracts for the benefit of third persons have been the prolific source of judicial and academic discussion. (Williston, Contracts

for the Benefit of a Third Person, 15 Harvard Law Review, 767; Corbin, Contracts for the Benefit of Third Persons, 27 Yale Law Review, 1008.) The general rule, both in law and equity (*Phalen* v. *U. S. Trust Co.*, 186 N. Y. 178, 186), was that privity between a plaintiff and a defendant is necessary to the maintenance of an action on the contract. The consideration must be furnished by the party to whom the promise was made. The contract cannot be enforced against the third party and, therefore, it cannot be enforced by him. On the other hand, the right of the beneficiary to sue on a contract made expressly for his benefit has been fully recognized in many American jurisdictions, either by judicial decision or by legislation, and is said to be ' the prevailing rule in this country.' (*Hendrick* v. *Lindsay*, 93 U. S. 143; *Lehow* v. *Simonton*, 3 Col. 346.) It has been said that ' the establishment of this doctrine has been gradual, and is a victory of practical utility over theory, of equity over technical subtlety.' (Brantly on Contracts [2d ed.], p. 253.) The reasons for this view are that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay. Other jurisdictions still adhere to the present English rule (7 Halsbury's Laws of England, 342, 343; Jenks' Digest of English Civil Law, § 229) that a contract cannot be enforced by or against a person who is not a party. (*Exchange Bank* v. *Rice*, 107 Mass. 37; but see, also, *Forbes* v. *Thorpe*, 209 Mass. 570; *Gardner* v. *Denison*, 217 Mass. 492.) In New York the right of the beneficiary to sue on contracts made for his benefit is not clearly or simply defined. It is at present confined, *first*, to cases where there is a pecuniary obligation running from the promisee to the beneficiary; ' a legal right founded upon some obligation of the promisee in the third party to adopt and claim the promise as made for his benefit.' (*Farley* v. *Cleveland*, 4 Cow. 432; *Lawrence* v. *Fox*, *supra*; *Garnsey* v. *Rogers*, 47 N. Y. 233; *Vrooman* v. *Turner*, 69 N. Y. 280; *Lorillard* v. *Clyde*, 122 N. Y. 498; *Durnherr* v. *Rau*, 135 N. Y. 219; *Townsend* v. *Rackham*, 143 N. Y. 516; *Sullivan* v. *Sullivan*, 161 N. Y. 554.) *Secondly*, to cases where the contract is made for the benefit of the wife (*Buchanan* v. *Tilden*, 158 N. Y. 109; *Bouton* v. *Welch*, 170 N. Y. 554), affianced wife (*DeCicco* v. *Schweizer*, 221 N. Y. 431), or child (*Todd* v. *Weber*, 95 N. Y. 181, 193; *Matter of Kidd*, 188 N. Y. 274) of a party to the contract. The close relationship cases go back to the early King's Bench case (1677), long since repudiated in England, of *Dutton* v. *Poole* (2 Lev. 210; s. c., 1 Ventris, 318, 332). (*Schemerhorn* v. *Vanderheyden*, 1 Johns. 139.) The natural and moral duty of the husband or parent to provide for the future of wife or child sustains the action on the contract made for their

benefit. ' This is the farthest the cases in this State have gone,' says CULLEN, J., in the marriage settlement case of *Borland* v. *Welch* (162 N. Y. 104, 110).

" The right of the third party is also upheld in, *thirdly*, the public contract cases (*Little* v. *Banks*, 85 N. Y. 258; *Pond* v. *New Rochelle Water Co.*, 183 N. Y. 330; *Smyth* v. *City of New York*, 203 N. Y. 106; *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40, 48; *Rigney* v. *N. Y. C. & H. R. R. R. Co.*, 217 N. Y. 31; *Matter of International Ry. Co.* v. *Rann*, 224 N. Y. 83; cf. *German Alliance Ins. Co.* v. *Home Water Supply Co.*, 226 U. S. 220) where the municipality seeks to protect its inhabitants by covenants for their benefit and, *fourthly*, the cases where, at the request of a party to the contract, the promise runs directly to the beneficiary although he does not furnish the consideration. (*Rector, etc.*, v. *Teed*, 120 N. Y. 583; *F. N. Bank of Sing Sing* v. *Chalmers*, 144 N. Y. 432, 439; *Hamilton* v. *Hamilton*, 127 App. Div. 871, 875.) It may be safely said that a general rule sustaining recovery at the suit of the third party would include but few classes of cases not included in these groups, either categorically or in principle."

It will be observed that the action here sought to be maintained would come, if at all, under the third class of cases above referred to, that is, the public contract cases.

The case of *Rigney* v. *N. Y. C. & H. R. R. R. Co.* (217 N. Y. 31) was an action for damages on account of changing the grade of a street, and under a contract made between the city and the defendant railroad the defendant would pay and liquidate damages on account thereof. The court held that the agreement was more than one to indemnify the city on account of damages and held that a person who suffered damages could maintain an action. The court says (at p. 37):

" I can see no reason why the plaintiffs cannot recover under this provision of the contract, upon the theory of *Lawrence* v. *Fox* (20 N. Y. 268) that the covenant or promise in the contract between the city and the railroad company to pay damages resulting from the change of grade was for the benefit of the plaintiffs.

" In order to bring the case within the doctrine of *Lawrence* v. *Fox* it must appear, *first*, that there was an intent on the part of the municipality to secure some benefit to the plaintiffs as the owners of land affected by the change of grade, and, *secondly*, that there was some obligation or duty owing from the municipality to the landowner which gives the latter a legal or equitable claim to the benefit of the contract. (*Vrooman* v. *Turner*, 69 N. Y. 280.) "

*Smyth* v. *City of New York* (203 N. Y. 106) was an action brought

to recover damages against the city of New York and a contractor, where the contractor agreed to be responsible for damages to abutting property owners in the construction of subways in the city of New York. It was held that the agreement was not one of indemnity, but that the contractor was responsible to the abutting owner for damages although he was not a party to the contract. Chief Judge CULLEN, writing for the court, and referring to the case of *Pond* v. *New Rochelle Water Co.*, says (p. 115): " In principle the case cited and the one before us seem to be almost identical. There, as here, the first object of the contract was for the supply of a corporate, as distinguished from a governmental want; there it was supplying water for the hydrants, street, and fire purposes; here the construction of a railroad. In the first case it was held that the village in its governmental character had sufficient interest in the welfare of its citizens and inhabitants to secure to each of them a supply of water at reasonable rates."

The municipality itself would have acted in a governmental capacity if it furnished or attempted to furnish water for fire purposes. (*Springfield F. & M. Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46; *Maxmilian* v. *Mayor*, 62 id. 160, 164; *Oakes Mfg. Co.* v. *City of N. Y.*, 206 id. 221, 228; *Canavan* v. *City of Mechanicville*, 229 id. 473, 476.) Under such circumstances no liability would attach against a city or village. It cannot be successfully urged that the water company was acting in a governmental capacity. The governmental functions of the city could not be delegated to a private corporation so that it would be immune from liability. The doctrine of non-liability of a municipality should not be extended any further than it has already been and under no circumstances should it be used to protect a private corporation against its wrongs and breach of obligations.

The inherent injustice due to the holding of non-liability of a State or one of its agencies has been recognized by the courts, and it has been the purpose of the courts as well as the Legislatures to extend liability against municipal corporations and in some jurisdictions to the same extent as against private corporations. Some courts have even held that the distinction between governmental and private functions of a municipal corporation is unsound and declare that the mode and measure of liability of a public corporation should be that prescribed to an individual or private corporation.

The test of liability of the defendant cannot be determined by the question of whether or not the city itself would be liable. In the case of *Smyth* v. *City of New York* (*supra*, at p. 116) we find this language: " Therefore, though the city might not be

liable for injuries occasioned by such negligence, it was entirely proper, if not morally obligatory upon the part of the Rapid Transit Commissioners to secure the abutting owners from loss or damage occasioned by negligence and improper conduct of the work."

The duty owed by the defendant to the plaintiff was one which it assumed through the corporate powers granted to it and by the franchise under which it acted and by its contract with the city as well as under the laws under which it acted and was permitted to exist and continue its relations. It cannot be questioned but that the municipality by the making of a contract and the paying of the yearly rental for hydrants for use of water for fire protection purposes sought to care for and protect the inhabitants and taxpayers of the city. Such was the purpose of the payment of the consideration and the covenants of the contract, and such covenants were made for the benefit of the landowners and inhabitants of the city. No cause of action would exist in favor of the city against the water company for the destruction of individual property. No cause of action under facts claimed would arise under the contract or in any other way against the city. The contract in question, in my judgment, is of the class referred to in the decision of *Seaver* v. *Ransom* wherein reference is made to the right of a third party to maintain an action in public contract cases where the municipality seeks to protect its inhabitants by covenants for their benefit. Furthermore, applying the test referred to in the case of *Rigney* v. *N. Y. C. & H. R. R. R. Co.,* to wit, *first,* an intent on the part of a municipality to secure some benefits to the plaintiff, and *second,* an obligation or duty owing from the municipality to the landowner. The requirements in the contract that the water system should be kept in good condition and with a water pressure of 285 feet head, coupled with the provision therein that the company should keep and maintain the fire hydrants then in position, together with such additional hydrants as should be required, and that the city through its fire department at the time of fires should have exclusive control of the hydrants, show conclusively the intent on the part of the municipality to secure benefit in the nature of protection to its inhabitants and taxpayers against fire. The funds of the city expended by it in payment for rental of fire hydrants in an aggregate to exceed $8,000 a year represent the expenditure of taxpayers' money and show some obligation as well as duty owing from the city to the landowner or inhabitant which would give a legal or equitable claim to the benefit of the contract. (*Farnsworth* v. *Boro Oil & Gas Co.,* 216 N. Y. 40, 48; [Charter of City of Rensselaer] Laws of 1915, chap. 69, § 5, subd. 12; Id. § 68, subd. 5.)

Contracts of public service corporations made with munici-

palities are made in the interest of individuals, and for their benefit. This would be true of a contract with a lighting company for furnishing street lights, as well as fixing the rates to be charged consumers. This would be true of a contract with a street railroad requiring it to maintain certain portions of the street pavement, as well as fixing the rate of fares, and is equally true of a contract with a water company providing for maintenance of hydrants for fire protection, as well as the fixing of the rate for water consumption by inhabitants.

The defendant was organized and continued for the purpose of supplying water in the city of Rensselaer, and under the law was required to supply the authorities of the city or any of its inhabitants with pure and wholesome water at reasonable rates and cost, and it was duty bound to deliver water through hydrants or otherwise for the extinguishment of fires, for sanitary, and other public purposes, and under the law was to be paid an amount annually on account of such contract as part of the expenses of the city, to be levied, assessed and collected as other expenses. The defendant was given the power to lay and maintain its pipes and hydrants and under the law was given the power of condemnation. (Transp. Corp. Law, §§ 80–85.)* The law supposes that a corporation will do its duty and fulfill its obligation. (*McEntee* v. *Kingston Water Co.*, 165 N. Y. 27, 32.)

What has been referred to earlier as the weight of authority upon the question of the liability of a water company is recognized as a hard rule and one which ought to require careful consideration and investigation for the purpose of determining the soundness of the principles which lead to such a result, and on account thereof it is held in some jurisdictions that the injured property owner may recover from the water company. The law in this State is not wholly clear. (Williston Cont. §§ 368, 372-a; Clark on New York Law of Contracts, §§ 784, 785; *Matter of Baker* v. *N. Y. Interurban Water Co.*, 113 Misc. 459, 465, 466.) In some jurisdictions such recovery is permitted upon the theory of negligence, and in other jurisdictions upon the theory of breach of contract. (Page Cont. § 2401.)

The question here presented is whether or not this type of action is maintainable under the laws of this State. The Court of Appeals of this State does not seem to follow the decision of the Supreme Court of the United States in the *German Alliance Ins. Co.* case, because in the portion of the opinion above quoted from *Seaver* v. *Ransom* the *German Alliance Ins. Co.* case is referred to for com-

---

* Now Transp. Corp. Law of 1926, §§ 40–46, effective October 1, 1926.— [REP.

parison with the holding of the Court of Appeals in a number of cases, among which are the *Pond, Rigney* and *Smyth* cases.

The decisions of the General Term and the Appellate Division in the Second Department in the *Wainwright* and *Smith* cases are based upon the principle that a cause of action could not be maintained by a stranger to the contract, and each of those cases held that a taxpayer or inhabitant was a stranger to the contract made with the water company and that he did not occupy a position permitting him to maintain any such action.

In so far as attempting to distinguish the *Wainwright* and *Smith* cases from the one under consideration, that would be futile. If they express the law of this State, the plaintiff cannot recover. The question then presents itself as to whether the rule of law as laid down in the recent decisions of the Court of Appeals is different from the law as stated in the *Wainwright* and *Smith* cases. Has the law as expressed in those cases been overruled by the later decisions of the Court of Appeals in the cases of *Pond* v. *New Rochelle Water Co.* (183 N. Y. 330); *Rigney* v. *N. Y. C. & H. R. R. R. Co.* (217 id. 31) and other cases cited in the above quotations?

An examination of the opinions in the last above referred to cases decided by the Court of Appeals discloses no reference to the *Wainwright* and *Smith* cases. In the *Pond* case the attorneys for the appellant cited *Wainwright* v. *Queens County Water Co.* as sustaining their contention that an action could not be maintained by an inhabitant of a village on a contract made between the village and a water company. The court in the *Pond* case says:

" In the case before us we have a municipality entering into a contract for the benefit of its inhabitants, the object being to supply them with pure and wholesome water at reasonable rates. While there is not presented a domestic relation like that of father and child or husband and wife, yet it cannot be said that this contract was made for the benefit of a stranger. In the case before us the municipality sought to protect its inhabitants, who were at the time of the execution of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time.

" We are of opinion that the complaint states a good cause of action."

The language quoted and the conclusion reached by the Court of Appeals in the *Pond* case are hardly reconcilable with the language heretofore quoted from the opinions of the courts in the *Wainwright* and *Smith* cases. The same rule of law would control whether the action be in equity or law. It has been applied and enforced in

actions at law. (*Lawrence* v. *Fox, supra; Smyth* v. *City of New York, supra; Rigney* v. *N. Y. C. & H. R. R. R. Co., supra; Hale* v. *Ripton*, 234 N. Y. 631.)   If the plaintiff was a total stranger to the contract, he could not maintain the action under any circumstances.   If under the law a plaintiff occupied such position as to be able to maintain an action, whether he should resort to one form of action or another would not be material.   Even the maintenance of an action *ex delicto* would be based upon the breach of an obligation, brought about through the contract made with the municipality.

" So that, notwithstanding numerous charges of culpable, wanton and malicious neglect of duty, this suit — whether regarded as *ex contractu* or *ex delicto* — is for breach of the provisions of the contract." (*German Alliance Ins. Co.* v. *Home Water Supply Co.*, 226 U. S. 228.)

It appears to be a fair conclusion that neither the decision of the *German Alliance Ins. Co.* case, nor the *Wainwright*, nor *Smith* case, is in accord with the holding of the Court of Appeals in the various cases to which I have referred.   The Court of Appeals has not, as far as I have been able to discover, passed upon the exact question presented here.

It is difficult to see, however, how a supply of water for domestic purposes within the terms of a contract is any more important to a resident taxpayer than the supply of water for the extinguishment of fires.   The breach of the contract in one regard is just as much a breach as in the other, and if a taxpayer can resort to an action in equity to enforce the terms of the contract, as was permitted in the *Pond* case, it is, indeed, difficult to discover why such rights should not inure to a plaintiff seeking damages for the breach of another covenant of the contract where the injury might be much more serious and more extensive.

That a right of action should be denied a plaintiff in this type of case on account of the possibility of extensiveness of recovery, does not appear reasonable.   Some courts have held for that reason that this class of action should not be sustained, claiming that the possibility of recovery would make a water company an insurer. Such reason so advanced does not outweigh the justness of the prevailing rule of conduct as well as principle of law that a person should be held accountable for the reasonable consequences of his acts and breach of his undertakings.   The danger of extensive recovery in this class of cases would be outweighed by difficulty with which a plaintiff would be confronted in sustaining his claim and proving his cause of action.   " The fact that a breach of the duty imposed in the one case may be visited, and justly, with

more serious consequences than in the other, by no means disproves the payment to be a duty in both." (*Lawrence* v. *Fox, supra,* 274.)

Because the furnishing of water by a municipality for fire protection may be a governmental act, is no sufficient reason to hold that a private corporation which covenants to furnish such protection for a consideration should be allowed to escape liability. Such rule, in my opinion, would be especially unjust in this case, where it is claimed that the breach of such obligation was due to the failure of the defendant, after notice of the fire, to use the instrumentalities and agencies which it had at hand and could have used to save and protect property.

Motion denied, with ten dollars costs.