H. R. MOCH COMPANY, INC., a Domestic Corporation, Respondent, v. RENSSELAER WATER COMPANY, a Domestic Corporation, Appellant.

Third Department, March 9, 1927.

**Water companies — liability — action by resident taxpayer of city to recover damages based on alleged negligent failure of water company to provide water for extinguishment of fire.— city had contract with defendant water company whereby latter agreed to furnish water for extinguishment of fires and to furnish water to inhabitants for domestic purposes — plaintiff cannot recover on theory that contract between city and defendant was made for benefit of taxpayer and residents of city.**

A water company which has a contract with a city to furnish water through hydrants for the extinguishment of fires, and to furnish water to the inhabitants of the city for domestic use, is not liable to a taxpayer and resident of the city for damages caused by alleged negligent failure to furnish necessary water to extinguish a fire in said resident's property, on the theory that the contract between the city and the defendant water company was made for the benefit of the taxpayers and residents of the city.

HINMAN and McCANN, JJ., dissent, with opinion.

43

APPEAL by the defendant, Rensselaer Water Company, from an order of the Supreme Court, made at the Sullivan Special Term and entered in the office of the clerk of the county of Albany on the 19th day of July, 1926, denying defendant's motion to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Thomas F. McDermott,* for the appellant.

*Burnham & Frank [Glenn A. Frank* of counsel], for the respondent.

VAN KIRK, Acting P. J. The appeal is from an order which denied defendant's motion to dismiss the complaint because it fails to state facts sufficient to constitute a cause of action. The action is to recover a loss sustained by the plaintiff by a fire which consumed its warehouse and the contents thereof on December 13, 1922. The plaintiff and defendant are domestic corporations. The property destroyed was in the city of Rensselaer. At the time of the fire there was outstanding and in force a contract between the city of Rensselaer and the defendant. The complaint sets forth this contract, which contains the following provisions: The defendant shall supply the city with wholesome water for public buildings, street sprinkling and for the extinguishment of fires and to the inhabitants for domestic purposes. The city shall pay for water used through the hydrants $42.50 per hydrant; the inhabitants shall pay for domestic use a fixed price per faucet. The water mains shall be maintained at all times in a condition sufficient to withstand a water pressure due to 285 feet head. " Water to be furnished hereunder is to be taken from the Hudson river at the place now used by said Company, where its pump house is now erected in said city. The plant of the Company including its pumping station, filtering plant, pipe system and reservoir, as now in use by it, may be used by the Company and it shall be maintained at all times at its present standard and efficiency. The water supplied shall be filtered and drawn from the Company's reservoir and be good, clear and wholesome and supplied in quantities sufficient for the purposes and needs of the said City, its inhabitants and factories * * *. The Company shall keep and maintain in proper working order the one hundred ninety-seven fire hydrants now in position. The City through its fire department at the time of inspection or test of fire department or at the time of fires in said City shall have exclusive control of all hydrants. At all other times they shall remain under the exclusive control of the Company, with the right to the City to properly and carefully use same in obtaining water for the purposes herein contracted for." It is further alleged that, on the 13th day of

December, 1922, a building near plaintiff's warehouse caught fire and the flames spread to plaintiff's warehouse. The defendant was immediately notified of the fire, but neglected to furnish an adequate quantity of water with adequate pressure to stay, suppress or extinguish the fire before it reached the warehouse of the plaintiff, although the pressure and quantity which defendant was equipped to supply and had agreed to furnish was sufficient to prevent the spread of the fire to plaintiff's building. The fire department of the city was not negligent in its efforts to extinguish the fire, but used every means available to that end, but failed owing to defendant's neglect. Plaintiff suffered damage in consequence in the sum of $46,477.14.

Thus the action intended to be stated rests in negligence; the duty is contractual; the negligence is the failure to perform as " agreed by said contract," namely, to furnish an adequate quantity of water with adequate pressure to extinguish the fire. In the light of the terms of the contract the charge of negligence is very indefinite and uncertain; there is no intimation as to what was the defect in defendant's plant; yet this plant, including the reservoir, the altitude of which determines the pressure, defendant was in terms permitted to use in fulfilling its contract obligations. We assume, however, that these allegations are sufficient to disclose the intent of the pleader.

The plaintiff, while not a party to the contract, claims that it was an intended beneficiary thereunder and, as such, is entitled to maintain this action.

We may remark, in passing, that, in the court below (127 Misc. 545), it was properly held that this defendant is not endowed with the immunity which would have protected the city in such an action had it undertaken to furnish water to the fire department for the purpose of extinguishing fires. (*Springfield Fire & Marine Ins. Co.* v. *Village of Keeseville,* 148 N. Y. 46.) The defendant was not organized to supply a public use or need, but to conduct a private business to its profit. It is not a part of city government and " cannot be treated as a governmental agency." (*People ex rel. Mills Water Works Co.* v. *Forrest,* 97 N. Y. 97.)

We turn then to the determining question in the case, whether or not this plaintiff, a property owner and taxpayer in the city, is such a beneficiary under the contract between the city and the water company, that he may maintain this action. We do not find that the Court of Appeals has ever passed upon this identical question. In *Wainwright* v. *Queens County Water Co.* (78 Hun, 146) and *Smith* v. *Great South Bay Water Co.* (82 App. Div. 427) it has been directly held that such an action may not be maintained.

Neither of these cases was taken to the Court of Appeals. The United States Supreme Court has made the same holding in *German Alliance Ins. Co.* v. *Home Water Supply Co.* (226 U. S. 220, 227). Also in a large majority of the States like holdings have been made. (Williston Cont. § 373, and cases cited.) It is, however, claimed and the court below has held, in an opinion which shows careful examination and consideration, that this action may be maintained, not because of any peculiar allegations in this complaint, or special relations between the parties, or special stipulations in the contract, but on the ground that in our State the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) has been so far extended as to cover this case. We do not think this position is tenable.

*Seaver* v. *Ransom* (224 N. Y. 233) is one of the more recent cases on this subject in our Court of Appeals. The court said in that case (p. 237): "The right of the beneficiary to sue on a contract made expressly for his benefit has been fully recognized in many American jurisdictions * * *." But this right "is not clearly or simply defined" in this State. Four classes of actions are then designated in which the right has been sustained; the third class is denominated "the public contract cases * * * where the municipality seeks to protect its inhabitants by covenants for their benefit." If the plaintiff in the instant case may recover it is because this case is one of the third class. In the cases of this class cited in the *Seaver* opinion two tests are applied by which the right to maintain the action is determined: (1) whether or not the contract was intended to be especially for the benefit of the plaintiff; (2) whether or not there was some obligation or duty owing from the municipality to the third party which gives the latter a legal or equitable claim to the benefit of the contract. (*Rigney* v. *N. Y. Central & H. R. R. R. Co.*, 217 N. Y. 31; *Vrooman* v. *Turner*, 69 id. 280; *Pond* v. *New Rochelle Water Co.*, 183 id. 330; *Smyth* v. *City of New York*, 203 id. 106; *Matter of International R. Co.* v. *Rann*, 224 id. 83.) In the *Pond* case the contract was to supply private consumers in the village with pure and wholesome water at a designated rate, not (as mistakenly stated in the opinion in the *Smyth* case) to supply water from hydrants for street and fire purposes. The water company had refused to supply water at the stipulated rates; and it was held that a resident could maintain an action to restrain the company from enforcing the collection of a rate in excess of that stipulated. The court concluded that the intent was to benefit the resident consumers by supplying them with pure and wholesome water, and that there was an obligation on the part of the village to protect the consumers from extortionate rates. In limiting the rule it was said that the third party need

not be privy to the consideration of the contract, nor need he be named especially as the person to be benefited; the benefit may run to those of a class specified. In the *Smyth* case there was a contract for the construction of subways and the contractor agreed to be responsible for damages done to abutting property. It was held that the plaintiff, being the owner of abutting property which had been damaged, was identified as an intended beneficiary, that the agreement was not to indemnify the city, but to answer in damages directly to the abutting owners. Chief Judge CULLEN, writing for the court, said that " the first object of the contract was for the supply of a corporate, as distinguished from a governmental want; " " it was well known and generally appreciated that for at least some very substantial part of the discomfort, damage and injury occasioned to the abutters by even the most careful and proper prosecution of the work, the abutter could not recover indemnity or compensation; " that in such great works negligence and fault will occur; and " that such fault will often be on the part of irresponsible parties from whom there would be small chance of recovering pecuniary redress." Therefore " it was entirely proper, if not morally obligatory upon the part of the rapid transit commissioners to secure the abutting owners from loss or damage occasioned by negligence and improper conduct of the work. This could only be accomplished by placing liability for the negligence upon a responsible contractor to whom they might give out the work." In the *Rigney* case the defendant contracted with the city to liquidate all damages suffered by abutting owners on account of changes of grades of streets. The court held that a property owner in the city was sufficiently identified as the intended beneficiary; that the contract was more than a covenant to indemnify the city; it was an actual assumption of liability for damages which might result to an abutting owner from carrying out the contract. In the argument and conclusion the case is quite similar to the *Smyth* case. Thus in each of these cases the two tests were satisfied.

We turn now to the relations between the parties and the city under the contract here. The contract provides for services to residents at their homes and to the city; these two services are distinct one from the other. A resident is to pay the defendant for house service at a fixed price per faucet. The city is to pay for the hydrant service at a fixed price per hydrant and it, alone, may use it. The defendant could collect nothing from residents for this hydrant service, which could be stopped regardless of the wish or interest of a resident to the contrary, if the stipulated payments were not made by the city. The stipulations for service

to the city make no reference to residents or to a class which could include plaintiff; nor does it appear that a benefit to a resident or class is contemplated in these stipulations. The fact that payment for hydrant water is made from money raised by taxes does not show an intent to benefit a resident. All money for city expenses is raised by taxes. A resident has no more direct interest in this contract for fire service than he has in services through the police department. The service is but an indirect benefit to him and he could enjoy such benefit only in case the city and the fire department did their full duty. No obligation ran directly to a resident property owner. Also the amount paid for fire service suggests that the parties could not have contemplated that the water company was assuming an obligation to pay fire losses. During a fire the pipe line and the hydrants were in the exclusive control of the city. At the time of a fire the defendant could do nothing except to furnish water in the pipes at the hydrants under the pressure which its reservoir and mains as then constructed would give; that is, the city purchased the water and its delivery for its own use that it might perform a governmental activity. It purchased this water as it would purchase a hose pipe, or engine, or fire extinguishing chemicals. The seller of the hose pipe, or engine, or water has nothing to do with the extinguishing of fires; he but furnishes a part of the apparatus or supplies which the city alone uses. Also the parties to the contract understood that the usual protection which a property owner has against fire is by insurance. In our view it was not intended that this defendant should assume a liability to protect property owners against fire loss. We think, as many cases have held, that this contract in respect to extinguishing fires was a city contract primarily made for its benefit, and not for the benefit of a property owner in the city.

The city was not under any legal obligation to furnish to its property holders protection against loss by fire. Neither at common law, nor by the statutes of this State, is a city required to furnish to its inhabitants protection against loss by fires. There is no allegation in this complaint that the city of Rensselaer was under such obligation. A water company may be organized under section 80 of the Transportation Corporations Law to supply pure and wholesome water to a municipality and its inhabitants; and, being so organized, the proper officers of the municipality have the power to contract with it for the delivery of water to hydrants or otherwise for the extinguishment of fires and for sanitary and other purposes. " The amount of such contract agreed to be paid shall be annually raised as a part of the expenses of such village or

city, and shall be levied, assessed and collected in the same manner as other expenses of the village or city are raised." (Trans. Corp. Law of 1909, § 81.) It will be observed that the right to make a contract to furnish water for the extinguishment of fires is permissive and not mandatory upon the city officers; and, when the city in this case made this contract for water for the purpose of extinguishing fires, it voluntarily assumed a governmental activity. (*Canavan v. City of Mechanicville,* 229 N. Y. 473.) Were the city the defendant here it could not be held liable for loss due to its negligence in failing to extinguish the fire. Nor do we think that the city was either morally or equitably obligated to this plaintiff. This contract does not, as in cases above cited, provide for any public work which would occasion some additional risk or loss to a resident's property. In fact it directly tended to decrease the risk of loss to which every resident property owner was subject. And we repeat that it is commonly understood that indemnity for loss by fire should be had through insurance. We find nothing in the complaint or in the contract indicating an intent to recognize any obligation of the city to protect property owners in the city. We do not find either of the tests, which have been applied in " public contract cases," satisfied in this case. The holding in the *Wainwright Case,* the *Smith Case* and the *German Alliance Ins. Co. Case* (*supra*) should be approved. If the holding in the two State cases is to be criticized, we should leave it to the Court of Appeals so to do.

The order should be reversed, with ten dollars costs, and the motion granted, with ten dollars costs.

Whitmyer and Davis, JJ., concur, the latter with an opinion; Hinman, J., dissents, with an opinion, in which McCann, J., concurs.

Davis, J. (concurring). The great weight of authority in other jurisdictions is undoubtedly against the plaintiff's right to recover in this action. (See 12 Cornell Law Quarterly, 207.) The same rule of non-liability has been adopted in this State. It is said that persons situated as is plaintiff have not the right of a beneficiary to sue on a contract made by a municipality with a private corporation for supplying water to extinguish fires. There is no privity between the citizens and the contracting company. (*Wainwright* v. *Queens County Water Co.,* 78 Hun, 146; *Smith* v. *Great South Bay Water Co.,* 82 App. Div. 427.) Mainly, such a contract is made for the protection of the private property of citizens rather than the property of the municipality. Yet citizens do have a beneficial interest in such contracts made by a municipality for supplying water or other necessity, so that they may individually

maintain actions to restrain charges in excess of the contract price. (*Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330; *Farnsworth* v. *Boro Oil & Gas Co.,* 216 id. 40.) If the proposition was new or original, it might be difficult to make distinction.

This particular action is brought on the theory of negligence. It is claimed that the defendant with notice that a devastating fire was raging and endangering plaintiff's property, failed and neglected to furnish sufficient water pressure to control it, although it had power and it was its duty so to do. It was due to this neglect that plaintiff suffered loss.

Whether the action is on contract or for negligence the rule is the same. (*German Alliance Ins. Co.* v. *Home Water Supply Co.,* 226 U. S. 220; *Wainwright* v. *Queens County Water Co., supra.*) No doubt the same rule would have to be applied if during the fire the president of the defendant had deliberately shut off the entire water supply. Even though the defendant bound itself by its contract with the municipality to pay damage sustained by any persons or property because of its negligence, apparently the same rule of privity would give the person suffering loss no right to recover. (*Mott* v. *Cherryvale Water & Mfg. Co.,* 48 Kans. 12; *Howsmon* v. *Trenton Water Co.,* 119 Mo. 304; *Smith* v. *Great South Bay Water Co., supra.*) It is, as said in the opinion of the learned court below, " a hard rule." (127 Misc. 545.)

It is possible that in the future the rigorous doctrine of the early cases in this State may be relaxed; that questions of privity will be given a place of less importance; that one contracting with another for the benefit of many may be held to assume a duty and required to act with care; that given the contract and the relation, a duty may be imposed by law; and that " diligence was owing not only to him who ordered, but to him also who relied." (*Glanzer* v. *Shepard,* 233 N. Y. 236, 239, 242.)

However, as Mr. Justice VAN KIRK says, this is not the court to make radical changes in the settled law of the State. I concur in the conclusion he reaches for reversal.

HINMAN, J. (dissenting). The charter of the city of Rensselaer provides: " Subject to the constitution and general laws of this state, this city is empowered: * * * 12. To prevent and extinguish fires and protect the inhabitants of the city and property within the city from loss or damage by fire or other casualty." (Laws of 1915, chap. 69, § 5, par. b, subd. 12.) Assuming a margin of discretion in the municipality to provide or not to provide a water supply to protect its inhabitants and their property from loss or damage by fire, having acted affirmatively the assumption may

be that it intended to contract to fulfill what it deemed to be a duty optional with it to protect its inhabitants and for their benefit, as recited in the statute. While the city itself may be immune from suit if it does the work directly, a company which contracts with it to do the work for pecuniary gain is not so immune, and it may be deemed to have undertaken the full performance of the city's statutory duty. The source of its obligation is in the law as a part of the contract. Upon these assumptions I see no reason for not extending to this case the liberal doctrines of *Pond* v. *New Rochelle Water Co.* (183 N. Y. 330); *Seaver* v. *Ransom* (224 id. 233, 237); *Matter of International R. Co.* v. *Rann* (Id. 83) and *Farnsworth* v. *Boro Oil & Gas Co.* (216 id. 40).

The plaintiff, however, sues in tort. The charge is that the defendant was negligent. Assuming that the plaintiff has no contract right to enforce, the question arises whether once the defendant assumes the duty it is liable for a negligent breach of that duty. I am greatly impressed by the reasoning of Mr. Justice BREWER who in *Guardian Trust & Deposit Co.* v. *Fisher* (200 U. S. 57, 68) wrote as follows: "It is true that a company contracting with a city to construct waterworks and supply water may fail to commence performance. Its contractual obligations are then with the city only, which may recover damages, but merely for breach of contract. There would be no tort, no negligence, in the total failure on the part of the company. It may also be true that no citizen is a party to such a contract, and has no contractual or other right to recover for the failure of the company to act, but if the company proceeds under its contract, constructs and operates its plant, it enters upon a public calling. It occupies the streets of the city, acquires rights and privileges peculiar to itself. It invites the citizens, and if they avail themselves of its conveniences and omit making other and personal arrangements for a supply of water, then the company owes a duty to them in the discharge of its public calling, and a neglect by it in the discharge of the obligations imposed by its charter, or by contract with the city, may be regarded as a breach of absolute duty, and recovery may be had for such neglect. The action, however, is not one for breach of contract, but for negligence in the discharge of such duty to the public, and is an action for a tort."

The relationship of the parties in this case is such that, aside from contract, the damage to the inhabitants is to be foreseen and there is a duty to avoid the injury. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Junkermann* v. *Tilyou Realty Co.*, 213 id. 404.) Thus the Court of Appeals has "put aside the notion that the duty to safeguard life and limb, when the consequences of negligence

may be foreseen, grows out of contract and nothing else." (*Mac-Pherson* v. *Buick Motor Co.*, *supra*, 390.) This is not a case where conduct, though negligent, may be said not to be likely to result in injury to any one except a party to the contract. Is the risk of injury too remote because prudent persons insure against such injury? I think not for the reason that the amount of insurance customarily taken out by the most prudent is measured by the fire protection deemed to be reasonably at hand. Unquestionably fire protection was for the safeguarding of life and limb and property of the inhabitants of this city. The defendant is a public service corporation and having assumed to serve the public for pecuniary gain it owed a duty to the inhabitants which it was bound to perform with care. It seems to me that one who so invites the public to rely upon him alone to render a service so essential to modern city life ought to be bound to the exercise of reasonable care and to be liable for injury which might reasonably have been foreseen and which would have been avoided but for his breach of that duty.

I favor an affirmance.

McCANN, J., concurs.

Order reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.